UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**U.S. Securities and Exchange Commission**       )
100 F Street, N.E.                                )
Washington, DC 20549                              )
                                                  )
     Movant,              )  11 Misc. 512
                                                  )
     -v.-                 )
                                                  )
**Deloitte Touche Tohmatsu CPA Ltd.**             )
30/F Bund Center                                  )
222 Yan An Road East                              )
Shanghai 200002, PRC                              )
                                                  )
     Respondent.          )

---

**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS APPLICATION FOR ORDER TO SHOW CAUSE**

  The United States Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this memorandum of law in further support of its Application for an Order to Show Cause (the "Application"), filed on September 8, 2011. More specifically, the SEC submits this memorandum in response to this Court's inquiries at a status hearing held on October 7, 2011. The Court asked the SEC to submit authority for its arguments that (1) the Court can issue the requested Order to Show Cause notwithstanding the fact that the Respondent has not yet been formally served with the Application or appeared in the case; and (2) the Court should authorize that service of the Order to Show Cause be effectuated on the Respondent (a foreign entity) by the SEC's providing a copy of the signed Order to Show Cause to the Respondent's U.S. counsel pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. As discussed below, there is ample authority for each of the SEC's arguments. Accordingly, the SEC urges this Court to issue the requested Order to Show Cause and

authorize the SEC to serve it upon the Respondent by providing a copy to the Respondent's U.S. counsel.

**I.      This Court May Issue The Order To Show Cause *Ex Parte.***

This Court can, and should, enter an Order to Show Cause in this case notwithstanding the fact that the Respondent has not yet been formally served with the SEC's Application or appeared in the case. Indeed, that is the standard practice in matters of this type. In a summary proceeding to enforce an administrative subpoena such as this one, it is wholly appropriate for a court to consider and issue an Order to Show Cause *ex parte*. In part, that is because the issuance of an Order to Show Cause itself does not deprive the Respondent of any substantive rights; the proposed Order simply directs the Respondent to respond to the substance of the SEC's claim – namely, that the Respondent has unjustifiably failed to comply with an administrative subpoena. Only after the Respondent has been served with the Order to Show Cause and has an opportunity to address the merits will the SEC request that the Court issue an Order directing compliance with the underlying subpoena.

The proposed Order to Show Cause is a standard way in which to commence an effort to enforce an administrative subpoena issued in the context of an ongoing investigation. For example, in *SEC v. Lines Overseas Mgt.*, No. 04 Misc. 302 (D.D.C. 2004), the SEC applied, as it has done here, for an Order to Show Cause and for an Order Requiring Obedience to a Subpoena without formally serving the Bermuda-based respondents with its application. Magistrate Judge Kay then issued an Order to Show Cause prior to any counsel appearing on behalf of the respondents. Upon issuance of the Order to Show Cause, the SEC served the respondents with the Court's Order and the respondents then appeared in the case. A copy of the docket sheet from *Lines Overseas* is attached to the accompanying declaration as Exhibit

A. *See SEC v. Lines Overseas Mgt.*, 04 Misc. 302, 2005 WL 3627141 (D.D.C. Jan. 7, 2005) (detailing background of case and addressing respondents' challenges to enforceability of subpoenas). The same practice was employed in the case of *SEC v. R.J. Reynolds Tobacco Holdings, Inc.*, No. 03 Misc. 1651 (D.D.C. 2003). A copy of the docket sheet from *R.J. Reynolds* is attached to the accompanying declaration as Exhibit B. *See SEC v. R.J. Reynolds Tobacco Holdings*, *Inc*., No. 03 Misc. 1651, 2004 WL 3168281 (D.D.C. June 29, 2004) (detailing background of case and addressing merits of SEC's application for an order requiring obedience to a subpoena).

     The D.C. Circuit has reviewed subpoena enforcement actions commenced in this manner and has never suggested that a district court must provide a respondent with an opportunity to be heard *before* the issuance of an Order to Show Cause. *See Resolution Trust Corp. v. Frates*, 61 F.3d 962, 963-64 (D.C. Cir. 1995) (approving district court's order to enforce an administrative subpoena and noting that "Judge Stanley S. Harris issued an *ex parte* order to show cause why the court should not grant the petition [to enforce an administrative subpoena] and, after oral argument, order the subpoena enforced"); *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 489-90 (D.C. Cir. 1984) (considering appeal from order enforcing subpoena where enforcement action was initiated through a petition for an order to show cause against Brazilian resident). Courts in other districts have similarly issued Orders to Show Cause in SEC subpoena enforcement actions in this manner. *See Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 415 (10th Cir. 1996) (describing background procedure by which the SEC filed an *ex parte* application for an order to show cause and, thereafter, served the respondent with the order); *SEC v. Nicita*, No. 07CV772 WQH (AJB), 2007 WL 1704585, at *1 (S.D. Cal. June 13, 2007) (same). Similarly,

courts routinely permit other agencies to commence subpoena enforcement proceedings through *ex parte* applications for Orders to Show Cause. *See, e.g., NLRB v. Baker*, 166 F.3d 333, 1998 WL 827373, at *2-3 (4th Cir. 1998) (approving district court decision, in subpoena enforcement action, to issue Order to Show Cause and direct that the Order be served on respondent who had not yet appeared in the case); *EEOC v. Roadway Express, Inc.*, 99-mc-0007-LW (N.D. Ohio 1999) (subpoena enforcement action commenced in the same manner).

Part of the reason that the issuance of an Order to Show Cause *ex parte* is particularly appropriate here is because an application to enforce an administrative subpoena is a summary proceeding, rather than a full-blown civil lawsuit. The SEC's application for an Order to Show Cause permits the SEC to commence summary subpoena enforcement proceedings without the filing of a complaint or serving the initial filing on the respondent. *See SEC v. Sprecher*, 594 F.2d 317, 320 (2d Cir. 1979) (holding that SEC could enforce investigatory subpoenas "upon application" to a district court in summary proceedings without the filing of a complaint); *cf. SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (explaining the difference between a summary proceeding, such as an application to enforce a subpoena, and a full-blown civil lawsuit, and noting that "[s]ummary proceedings may be 'conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even *ex parte*'" (quoting *New Hampshire Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 406 (1960)).

Finally, it bears repeating that issuance of the Order to Show Cause prior to the Respondent's appearance in the case will not in any way deprive the Respondent of the opportunity to be heard.

> A show-cause motion essentially asks a district court to issue an order requiring the nonmovant to show the court by a certain date why the court should not take some other action --- here, the imposition of [an Order Directing Compliance with a Subpoena]. In other words, the show-cause order satisfies the due-

4

>process notice requirement by giving the nonmoving party notice of his
opportunity to respond before the substantive request for relief is entertained.

*SEC v. Hyatt*, 621 F.3d 687, 695 (7th Cir. 2010).  Thus, after the Order to Show Cause has been issued and served upon the Respondent, the Respondent will have the opportunity to address the merits of the SEC's application for an Order Directing Compliance with the Subpoena.  Requiring the SEC to serve upon the Respondent a copy of its initial Application for an Order to Show Cause, and providing the Respondent with an opportunity to respond to *that* Application prior to issuing the Order to Show Cause, would simply invite two rounds of briefing on the same issues – the Application for an Order to Show Cause and the Application for an Order Directing Compliance with the Subpoena.

In sum, this Court can and should issue an Order to Show Cause prior to the Respondent's initial appearance in this case.  The SEC will then serve that Order, together with the SEC's Application and memoranda, upon the Respondent.  At that point, the Respondent will of course have the full protections provided by due process, and will have an opportunity to be heard on the merits of this case.

**II.     This Court Should Authorize The SEC To Serve The Order To Show Cause On The Respondent's U.S. Counsel.**

The SEC further submits that this Court should authorize the SEC to serve the Order to Show Cause on the Respondent by providing it to the Respondent's U.S. counsel.  This is reflected in the form of proposed Order to Show Cause submitted by the SEC in connection with its initial Application.  As explained further below, such an Order is authorized by law and is entirely appropriate in the facts of this case.

**1.      The Law Permits The Court To Authorize The Order To Show Cause To Be Served On A Foreign Entity By Any Means Not Prohibited By International Agreement.**

In this case, because D&T Shanghai is a foreign entity, service of the Order to Show Cause will be governed by Rule 4(f) of the Federal Rules of Civil Procedure.[1]  Rule 4(f) provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). This Rule was "adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Kaplan v. Hezbollah*, 715 F. Supp. 2d 165, 166 (D.D.C. 2010) (quotations omitted).  The decision to allow service by "other means" in a given case lies in the sound discretion of the district court.  *See Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004); *Prewitt Enters., Inc. v. Org. of Petrol. Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003).

Courts have held repeatedly that service upon a foreign person's U.S. counsel is an appropriate means of service that can be authorized by a district court.  For example, in *Rio Properties v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), the Ninth Circuit approved, "[w]ithout hesitation," a district court's order authorizing a litigant to serve a foreign respondent by serving its U.S. counsel.  *Id.* at 1017.  The Ninth Circuit observed:

---

[1] In fact, because this action is a summary proceeding to enforce a subpoena, the available means of service is arguably broader than Rule 4(f) of the Federal Rules of Civil Procedure provides.  For example, Section 21(c) of the Exchange Act further states that "[a]ll process in any [case to enforce a subpoena] may be served in the judicial district whereof such person is an inhabitant or wherever he may be found."  15 U.S.C.§ 78u(c).  Thus, Section 21(c) provides for yet another means of service beyond those set forth in Rule 4(f).  In any event, as set forth above, in this case the SEC is seeking authorization to serve the Respondent by providing the Order to Show Cause to the Respondent's U.S. counsel, pursuant to Rule 4(f)(3).

> Service upon [U.S. counsel] was also appropriate because he had been specifically consulted by [the respondent] regarding this lawsuit. He knew of [the respondent]'s legal positions, and it seems clear that he was in contact with [the respondent] in Costa Rica. Accordingly, service to [U.S. counsel] was also reasonably calculated in these circumstances to apprise [the respondent] of the pendency of the present action.

*Id*. at 1017. Other courts have similarly not hesitated in authorizing litigants to serve process on foreign parties through their U.S. counsel. *See RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 2295907, at *4-6 (S.D.N.Y. Aug. 10, 2007) (authorizing service upon defendant's U.S. counsel despite counsel's claims that he was not authorized to accept service on his client's behalf); *Forum Fin. Grp., LLC v. President and Fellows of Harvard Coll.*, 199 F.R.D. 22 (D. Me. 2001) (holding that court-directed service of process upon foreign defendant by service upon his U.S. counsel was appropriate, notwithstanding counsel's claim that he was not authorized by client to accept service); *Marlabs, Inc. v. Jakher*, 07-cv-4074 (DMC), 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010) (authorizing service on Indian defendant through defendant's attorney, pursuant to Rule 4(f)(3)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 WL 2198240, at *2-3 (N.D. Cal. May 28, 2010) (authorizing plaintiffs to serve foreign defendants through their U.S. counsel and noting that requiring plaintiffs to serve defendants by letters rogatory, where defendants and their counsel already had notice of the litigation, would be unnecessarily expensive, time-consuming, and burdensome).

There is no requirement that a party exhaust all possible means of serving a foreign person, including service through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention") under Rule 4(f)(1) of the Federal Rules of Civil Procedure, prior to seeking authorization from a court to serve that person via U.S. counsel pursuant to Rule 4(f)(3). As the Ninth Circuit observed in *Rio Properties*:

> [C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2). Indeed, Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction "or." Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service by other means.

284 F.3d at 1015 (footnote omitted); *accord Nanya Tech. Corp. v. Fujitsu Ltd.*, 06-cv-25, 2007 WL 269087, *5 (D. Guam Jan. 26, 2007) (upholding Magistrate Judge's order permitting service under Rule 4(f)(3) even where plaintiff had not exhausted Hague Convention or other possible means of service); *Studio A Entm't, Inc. v. Active Distribs., Inc.*, No. 06-cv-2496, 2008 WL 162785, *3 (N.D. Ohio Jan. 15, 2008) (authorizing service by fax on foreign person, pursuant to Rule 4(f)(3), and noting that plaintiff need not exhaust possible means of service under Rules 4(f)(1) and 4(f)(2) prior to seeking application of the court under Rule 4(f)(3)); *MPS IP Serv. Corp. v. Modis Commc'ns.*, No. 3:06cv270, 2006 WL 3852673 (M.D. Fla. May 30, 2006) (citing *Rio Properties* with approval and allowing plaintiff to serve Canadian person via e-mail); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (explaining that Rule 4(f) "does not denote any hierarchy or preference of one method of service over another." (citing *Rio Properties*, 284 F.3d at 1015)); *SEC v. Anticevic*, Case No. 05-cv-6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (holding that a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the court can order service pursuant to Rule 4(f)(3)); *cf. Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 540 (S.D.N.Y. 1965) (Weinfeld, J.) (discussing predecessor version of Rule 4(f)(3) and noting that "the necessary safeguards are determined by the court[,] which to assure adequacy of notice, may tailor the manner of service to fit the necessities of a particular case" (internal quotations

omitted)).[2]  The conclusion that there is no required hierarchy among possible means of service under Rule 4(f) is bolstered by the advisory committee notes to Rule 4(f)(3), which "suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods of service remain incomplete or unattempted." *Rio Properties*, 284 F.3d at 1015.

In sum, "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'" *Rio Properties*, 284 F.3d at 1015; *see also* 4B Wright & Miller, *Federal Practice & Procedure: Civil* § 1134 (3d ed. 2011) ("The use of a court-directed means for service of process under Rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief."). Ultimately, the decision of whether to authorize a party to serve pleadings on a foreign respondent through its U.S. counsel (or through any other means) is committed to the sound discretion of the district court and should be evaluated upon the facts of a given case.

---

[2]  To the extent that certain courts have stated things to the contrary, *see, e.g., Chanel, Inc. v. Zhixian*, No. 10-cv-60585, 2010 WL 1740695, at *2 (S.D. Fla. Apr. 29, 2010) ("If the Hague Service Convention applies, the parties must first attempt to effectuate service by the means designated in the Convention"); *SEC v. Shehyn*, No. 04-cv-2003 (LAP), 2008 WL 6150322, at *2 (S.D.N.Y. Nov. 26, 2008), they have generally done so based on a misunderstanding of the Supreme Court's statement that "compliance with the Hague Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Hague Convention only applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, art. 1; *Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir. 2004) (discussing applicability of Hague Convention). If this Court authorizes service of process upon U.S. counsel pursuant to Rule 4(f)(3), however, no documents would need to be sent abroad, and the Hague Convention would not apply. Accordingly, as the cases cited above have repeatedly held, there is no basis for any requirement that a litigant pursue the Hague Convention before applying to the Court for a sensible alternative means of service, pursuant to Rule 4(f)(3), that is designed to provide another litigant with ample notice of the litigation and an opportunity to respond. Indeed, as explained above, allowing such flexibility is precisely the purpose of Rule 4(f)(3).

### 2. The Court Should Authorize Service Of The Order To Show Cause On D&T Shanghai Through Its U.S. Counsel.

In this case, the Court should exercise its discretion and authorize the SEC to serve the Order to Show Cause on the Respondent by providing it to Respondent's U.S. counsel. "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996); *see also Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176 (2d Cir. 1979) ("The Supreme Court has long recognized that no one form of substitute service is favored over any other so long as the method chosen is reasonably calculated, under the circumstances of the particular case, to give the defendant actual notice of the pendency of the lawsuit and an opportunity to present his defense."). There can be no real dispute that, in this case, serving the Respondent's U.S. counsel will satisfy all of those aims while also avoiding potentially significant and unnecessary delay. Accordingly, the SEC respectfully submits that such an order is entirely appropriate here.

The Respondent's U.S. counsel has notified the SEC that the Respondent has not authorized it to accept service of the Order to Show Cause (or other process) on the Respondent's behalf, and has indicated that it will take the position that service must be made under the Hague Convention. (Lanpher Decl. ¶¶ 7, 9). But the fact that the Respondent declares its U.S. counsel not authorized to accept service of process is neither dispositive nor particularly relevant. *See Fridman*, 2007 WL 2295907, at *6 (rejecting claim that because a foreign individual had not authorized his U.S. counsel to accept service of process, court could not authorize service through that U.S. counsel pursuant to Rule 4(f)(3)). Far more relevant is

the fact that serving the Order to Show Cause on the Respondent's U.S. counsel will unquestionably effectuate the core function of service of process.

As an initial matter, the SEC's proposed means of service is not prohibited by international agreement and is thus permissible under Rule 4(f)(3). While China is a signatory to the Hague Convention, there is nothing in the Hague Convention that precludes a U.S. court from authorizing the proposed means of service of process. That is because the proposed method of serving the Respondent would not involve directly sending documents into China or any other conduct that would constitute an affront to China's sovereignty. *See generally Brockmeyer v. May*, 383 F.3d at 801-06 (discussing limits of Hague Convention). Accordingly, the core question is whether the proposed means of service of process comports with due process and is otherwise appropriate.

As set forth in the SEC's initial memorandum in support of its Application for an Order to Show Cause, D&T Shanghai has been represented in this investigation by Michael Warden, Esq., of Sidley Austin LLP. (Deitch Decl. ¶ 20). Mr. Warden has submitted letters to the SEC on behalf of his client in response to the Subpoena, and has been keenly aware of the instant litigation. Indeed, the undersigned spoke with Mr. Warden and provided him a copy of the filings the day the case was filed; since that time, we have spoken about numerous matters relevant to the litigation. (Lanpher Decl. ¶¶ 5-6). For example, when the SEC desired to file a motion in response to the District Court's referral of the case to a Magistrate Judge "for all purposes," we consulted with Mr. Warden about language to include in the SEC's motion reflecting D&T Shanghai's position on the matter. (*Id*. ¶ 8). Mr. Warden indicated that he would need time to consult with his client; after he had a chance to do so, he provided proposed language for the SEC to include in its motion reflecting D&T Shanghai's position.

(*Id*.). In addition, Mr. Warden was present in court (albeit in the gallery) for the October 7, 2011 hearing that this Court held to address the SEC's Application, and subsequently provided the SEC with a letter regarding certain issues. (*Id*. ¶¶ 10-11, Ex. E). In short, D&T Shanghai is already well represented here and knows full well of the instant action.

The only result of forcing the SEC to employ the Hague Convention to serve D&T Shanghai with the Order to Show Cause will be a substantial delay and a waste of resources. Forcing the SEC to resort to the Hague Convention in a case such as this would require the SEC to send court papers halfway around the world (literally) all so that those papers can be returned to U.S. counsel who has already received and reviewed them. That is a process that would be needlessly expensive, as it would involve translating numerous documents from English to Chinese. It is also a process that would take months, if not longer, and yet would in no way advance the core goals of service of process. In that time, however, the Longtop investors who have seemingly lost a billion dollars in a massive fraud will get no closer to vindication because D&T Shanghai refuses to comply with an administrative subpoena that required it to produce its audit work papers and other documents to the SEC in June.[3] Moreover, with every passing month that D&T Shanghai refuses to produce the responsive

---

[3]   D&T Shanghai's U.S. counsel has suggested to the SEC that because Longtop's securities are no longer trading on the New York Stock Exchange, there is no urgency to the investigation. (Lanpher Decl. Ex. E). As an initial matter, Longtop's securities continue to trade in the over-the-counter market. More to the point, we respectfully suspect that such an argument will be of little solace to those U.S. investors left holding essentially valueless shares of Longtop securities. Similarly, U.S. counsel has suggested that the subpoena should not be enforceable because the SEC has not yet employed certain other tools arguably available to it, such as asset freezes. (*Id*.). Again, we think such self-serving arguments should be rejected; D&T Shanghai is essentially suggesting that because the SEC has not employed *every* possible tool to investigate Longtop, it should not be permitted to utilize *this* tool to investigate. Fortunately, that is not the law. And it bears repeating that because D&T Shanghai

documents, it will become harder to investigate what happened at Longtop – leads that the SEC would follow if it had D&T Shanghai's workpapers will dry up, witnesses will become harder to find, and the memories of those witnesses who can be found will undoubtedly fade.  This Court has the discretion to cut through months of unnecessary bureaucracy and authorize that service be made on the Respondent's U.S. counsel, who has been closely following this litigation.  *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2198240, at *2-3 (authorizing the plaintiffs to serve foreign defendants through their U.S. counsel because of posture of litigation and recognizing that "there is no reason to require service through letters rogatory" "in light of the availability of alternative, speedier relief under Rule 4(f)(3)"). The SEC respectfully submits that this Court should do so.  Issuing the Order to Show Cause and permitting such service will allow the parties – and the Court – to turn forthwith to the merits of this important case, and will permit the SEC to proceed with its investigation.

---

refuses to comply with the Subpoena that was issued to it, the SEC is effectively hamstrung in its ability to pursue certain investigative steps.

## V.     CONCLUSION

For the foregoing reasons, and for the reasons set forth in its initial memorandum in support of its Application for an Order to Show Cause, the SEC respectfully submits that this Court should enter an Order to Show Cause in the form provided.[4]

Dated:  October 13, 2011

                              Respectfully submitted,

                              /s/ Mark Lanpher
                              Mark Lanpher
                              Attorney for Plaintiff
                              SECURITIES AND EXCHANGE COMMISSION
                              100 F Street, NE
                              Washington, DC 20549
                              (202) 551-4879 (Lanpher)
                              Fax: (202) 772-9228
                              E-mail: lanpherm@sec.gov

Of Counsel:
ANTONIA CHION
New York Bar Attorney Registration No. 1873405
LISA WEINSTEIN DEITCH
California Bar No. 137492
HELAINE SCHWARTZ
New York Bar Attorney Registration No. 1917046

---

[4]  The proposed Order to Show Cause leaves blank spaces for the Court to set a briefing schedule and a date for a hearing on the merits.  In light of conversations SEC counsel has had with the Respondent's U.S. counsel since the filing of this action, however, the SEC respectfully submits that it is likely that some limited discovery will be appropriate in this case before any ultimate hearing on the merits.  Accordingly, the SEC respectfully requests that, rather than include a full briefing and hearing schedule in its initial Order to Show Cause, this Court direct the Respondent's initial brief to be due approximately one month after service of the Order to Show Cause and schedule another conference thereafter to address further scheduling.