**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | Miscellaneous Action No. 11-0512 GK/DAR |
| -v.- | ) ) | |
| DELOITTE TOUCHE TOHMATSU CPA LTD., | ) ) ) | |
| Respondent. | ) ) | |
| _____ | ) | |

**MOTION OF RESPONDENT DELOITTE TOUCHE TOHMATSU CPA LTD. TO
CLARIFY THE COURT'S ORDER TO SHOW CAUSE**

Respondent Deloitte Touche Tohmatsu CPA Ltd. ("DTTC"), by undersigned counsel,

respectfully moves this Court to clarify whether the Court intended in its Memorandum Opinion

and Order ("Opinion") to rule on the manner of service by the Petitioner Securities and

Exchange Commission ("SEC") of the Order to Show Cause and related documents upon DTTC.

The Court's Opinion states that the Court "has no occasion to make findings" to govern service

in this matter.  The Order to Show Cause submitted by the SEC and signed by the Court allows

service on DTTC's counsel by overnight mail, facsimile, or electronic mail.  The Opinion and

the Order appear to be inconsistent.  This motion seeks clarification so that DTTC and the Court

have a common understanding of any ruling on service.

DTTC files this motion and appears through counsel subject to its objections to service of

the Order to Show Cause and related documents, to personal jurisdiction, and to subject matter

jurisdiction.  DTTC expressly reserves its right, at the appropriate time, to raise these objections

through motion, responsive pleading, or otherwise.  This motion simply seeks clarification of the

Court's *ex parte* decision.

In support of its motion, DTTC states as follows:

1. On May 27, 2011, the SEC issued a Subpoena to DTTC calling for the production of documents located in the mainland of the People's Republic of China ("PRC").  (*See* Document No. 1-2, Ex. C.)  On September 8, 2011, the SEC filed an Application for Order to Show Cause and for Order Requiring Compliance with a Subpoena (the "Application") attaching a draft Order to Show Cause (Document 1-4, Ex. A), a supporting brief (Document No. 1-1), and a declaration, with additional exhibits attached (Document No. 1-2).

2. At an October 7, 2011 hearing, the Court inquired whether the SEC was required to serve DTTC pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") and noted that Fed. R. Civ. P. 4 "contemplates, at least in the first instance, compliance with the requirements of the Hague Convention."  (Hr'g Tr. 6-7 & 8, attached as Ex. A.)   Both at the October 7 hearing and in its October 13, 2011 Memorandum of Law in Further Support of its Application for Order to Show Cause (Document No. 7 (the "Service Memorandum")), the SEC argued that it was appropriate to allow service of DTTC by mail, facsimile, or e-mail on DTTC's United States counsel under Fed. R. Civ. P. 4(f)(3), rather than pursuant to the Hague Convention under Fed. R. Civ. P. 4(f)(1).  (*Id.* at 5-13; Hr'g Tr. 6-7 & 8.)[1]

3. On January 4, 2012, the Court issued its Opinion and declined to rule on the service issue: "The court has no occasion to make findings with respect to the provision of the Federal Rules of Civil Procedure [that] would govern service of the application.  *See* [Service] Memorandum at 5-13."  (Document No. 10 at 3 n. 3.)  In so doing, the Court expressly declined

---

[1] As the SEC has observed, service is a "key issue" with respect to the Order to Show Cause (Hr'g Tr. 6-7), and the Court cannot "turn forthwith to the merits of the case" until the SEC serves the Order to Show Cause (Service Memorandum, Document No. 7 at 13).

to make findings with respect to pages 5-13 of the Service Memorandum—where the SEC addressed the question of service of the Order to Show Cause.  (Document No. 7.)

4.     Notwithstanding the fact that the Opinion noted that the Court had "no occasion to make findings" as to whether service was proper under Rule 4(f)(1) (and the Hague Convention) or Rule 4(f)(3), the Court executed the Order to Show Cause prepared by the SEC. In so doing, it included the SEC's proposed language allowing service "by overnight mail, facsimile or electronic mail delivery upon [DTTC's] counsel."  (Document No. 11 at 2.)  In this respect, the Order to Show Cause appears to be inconsistent with the Court's holding that it did not have occasion to rule on service issues.

5.     DTTC seeks clarification regarding whether the Court intended to address the manner of service in the Order to Show Cause.  If the Court did not intend to address service through the Order to Show Cause, DTTC respectfully suggests that the Court make that clear by striking the language in the second ordering paragraph of the Order to Show Cause that the SEC's filings may be "served upon the Respondent by representatives of the Commission by overnight mail, facsimile or electronic mail delivery upon their counsel" and replace it with "served upon the Respondent by representatives of the Commission by any means authorized by law."

WHEREFORE, for the foregoing reasons, Respondent Deloitte Touche Tohmatsu CPA Ltd., respectfully requests that the Court

(1) clarify whether it intended to address service in its Order to Show Cause; and

(2) if not, strike the language from the second ordering paragraph of the Order to Show Cause that the SEC's filings may be "served upon the Respondent by representatives of the Commission by overnight mail, facsimile or electronic mail delivery upon their counsel" and

replace it with "served upon the Respondent by representatives of the Commission by any means authorized by law."

Dated: Washington, DC                    Respectfully submitted,

    January 11, 2012                    _____/s/Michael D. Warden/_____

                              SIDLEY AUSTIN LLP
                              Michael D. Warden (419449)
                              HL Rogers (974462)
Of counsel:                    Sidley Austin LLP
                              1501 K Street, NW
SIDLEY AUSTIN LLP              Washington, DC 20005
Gary Bendinger                 (202) 736-8000
787 Seventh Avenue
New York, NY 10019
(212) 839-5387

David A. Gordon
One South Dearborn
Chicago, IL 60603
(312) 853-7159

        *Counsel for Deloitte Touche Tohmatsu CPA Ltd.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Petitioner, | ) ) |
| -v.- | ) ) |
| DELOITTE TOUCHE TOHMATSU CPA LTD., | ) ) ) |
| Respondent. | ) ) |

Miscellaneous Action
No. 11-0512 GK/DAR

**ORDER CLARIFYING THE COURT'S ORDER TO SHOW CAUSE**

Respondent Deloitte Touche Tohmatsu CPA, Ltd. ("DTTC"), having filed a Motion to Clarify the Court's Order to Show Cause, and the Court having considered the Motion, and good cause having been shown, it is hereby,

ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that the Order to Show Cause was not intended to rule on the manner of service by the Petitioner Securities and Exchange Commission ("SEC") of the Order to Show Cause and related documents upon Respondent DTTC and that the Court strikes the language from the second ordering paragraph of the Order to Show Cause that the SEC's filings may be "served upon the Respondent by representatives of the Commission by overnight mail, facsimile or electronic mail delivery upon their counsel" and replaces it with "served upon the Respondent by representatives of the Commission by any means authorized by law."

IT IS FURTHER ORDERED that the schedule set forth in the Order to Show Cause is hereby vacated.


_____

Judge Deborah A. Robinson
United States Magistrate Judge

Dated: _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Petitioner, | ) ) |
| -v.- | Miscellaneous Action No. 11-0512 GK/DAR ) ) |
| DELOITTE TOUCHE TOHMATSU CPA LTD., | ) ) ) ) |
| Respondent. | ) ) |
| _____ | ) |

**CERTIFICATE OF SERVICE**

I certify that on January 11, 2011, I served, via first class mail and email, Respondent's

Motion to Clarify the Court's Order to Show Cause on:

> Mark Lanpher
> Securities and Exchange Commission
> 100 F Street NE
> Washington, DC 20549
> LanpherM@sec.gov

Dated: Washington, DC          Respectfully submitted,

January 11, 2012                 _____/s/Michael D. Warden/_____

SIDLEY AUSTIN LLP
Michael D. Warden (419449)
HL Rogers (974462)
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

*Counsel for Deloitte Touche Tohmatsu CPA Ltd.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Petitioner, | ) Miscellaneous Action ) No. 11-0512 GK/DAR |
| -v.- | ) ) |
| DELOITTE TOUCHE TOHMATSU CPA LTD., | ) ) ) |
| Respondent. | ) ) |
| _____ | ) |

**CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7(M)**

I certify that on January 10, 2012, I conferred by telephone with counsel for the U.S.

Securities and Exchange Commission Mark Lanpher. Parties conferred in good faith and were

unable to resolve our differences.


_____/s/Michael D. Warden/_____

Dated: Washington, D.C.          Respectfully submitted,

    January 11, 2012          SIDLEY AUSTIN LLP
                          Michael D. Warden (419449)
                          HL Rogers (974462)
                          Sidley Austin LLP
                          1501 K Street, N.W.
                          Washington, D.C. 20005
                          (202) 736-8000

                          *Counsel for Deloitte Touche Tohmatsu CPA Ltd.*

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| U.S. SECURITIES AND EXCHANGE. | Case No. 1:11-MC-00512 |
| | (GK/DAR) |
| COMMISSION, | |
| | Washington, D.C. |
| Plaintiff, | October 7, 2011 |
| | |
| v. | |
| | |
| DELOITTE TOUCHE TOHMATSU | |
| | |
| CPA, LTD, DDC, | |
| | |
| Defendant. | |

STATUS HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Petitioner:          U.S. Securities and
                             Exchange Commission
                             By:  MARK LANPHER, ESQ.
                             100 F Street, N.E.
                             Washington, DC 20549

Of Counsel:                  By:  LISA DEITCH, ESQ.
                                  HELAINE SCHWARTZ, ESQ.
                             (Firm and address not
                             provided.)

_____
BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335 - (860) 464-1083

1          (Proceedings commenced at 4:13 p.m.)

2               THE CLERK:  Miscellaneous Case Number 11-512.

3               This is the matter of <u>U.S. Security and</u>

4     <u>Exchange Commission v. Deloitte Touche Tohmatsu.</u>

5               Counsel for the Petitioner, Mark Lanpher.

6               Of Counsel, Lisa Deitch and Helaine Schwartz.

7               This is scheduled for a motions hearing.

8               MR. LANPHER:  Good afternoon, Your Honor.

9               THE COURT:  Now, good afternoon.

10               The Court received the District Judge's

11     referral of this matter for the purpose of full case

12     management.

13               The obvious question that must be addressed

14     at this time, Mr. Lanpher, is the status of the

15     Petitioner's efforts to serve the Respondent with the

16     motion.

17               The record, of course, reflects that no one

18     has entered an appearance on behalf of the Respondent,

19     and it is not -- the Court is unable to discern from

20     any matter -- from any of the materials that have been

21     filed by the Petitioner, what efforts were undertaken

22     to serve the Respondent, and when I say, "Serve the

23     Respondent", I don't mean with the subpoena, I mean

24     with the motion.

25               MR. LANPHER:  Certainly, Your Honor.  Let me

1    address that.

2            In our view --

3            THE COURT:  I can hear you, but I need you

4    closer to the microphone to ensure that you're

5    recorded.

6            MR. LANPHER:  Yes, Your Honor.

7            In our view, in a case such as this, where

8    we're applying for an order to show cause, the order to

9    show cause itself would act as, in effect, the

10   complaint or summons, which we would then serve upon

11   the Respondent once it has been issued by the Court.

12           In this case, the day we filed our motion we

13   provided a copy to Defense Counsel.  We have been in --

14           THE COURT:  Who is -- Let me ask you to be

15   more specific, please.

16           MR. LANPHER:  Defense Counsel, or Counsel for

17   the Respondent, Deloitte Touche Tohmatsu --

18           THE COURT:  I assume you meant Counsel for

19   the Respondent and not --

20           MR. LANPHER:  That's correct.

21           THE COURT:  -- the defendants because there

22   is no defendant in this case.

23           MR. LANPHER:  That's correct, Your Honor.

24           Counsel for the Respondent is Sidley Austin,

25   and specifically Michael Warden, who is actually

1      present in the courtroom in the first row today.

2              We have been in touch with Mr. Warden, both

3      prior to the filing of this litigation and since our

4      filing of this litigation.

5              It is -- As I said, we provided copies of our

6      papers to Mr. Warden the day we filed it, and what we

7      are asking for the Court to do is to enter the order to

8      show cause and, as part of that, order that service can

9      be made in a case such as this, on Deloitte Touche's

10     U.S. counsel.

11             Deloitte Touche, of course, is a foreign

12     entity, but in our view, in a case such as this, where

13     they have U.S. counsel, U.S. counsel has been

14     representing them in all the pre-litigation stages of

15     this, and in negotiations during the pendency of the

16     litigation.

17             They're obviously fully aware of this

18     proceeding.  Indeed, Counsel is present in the

19     courtroom today.

20             In our view, serving counsel is perfectly

21     appropriate pursuant to -- it's Rule 4(f)(3) of the

22     Rules of Civil Procedure.  This Court can order that

23     service may be made in any manner not prohibited by

24     international agreement, and courts have repeatedly

25     held that one such approvable method is service on a

1    foreign entity's U.S. counsel.

2          So we are asking the Court, as part of its

3    order to show cause, to direct that service may be made

4    on Deloitte Touche, including through its U.S. counsel.

5    We would, of course, seek international processes, as

6    well, to serve the order on Deloitte Touche.

7          But that is where we are, and that's why no

8    Respondent has actually appeared in the case.  It's

9    because the order to show cause has not yet been

10   entered.

11         THE COURT:  My initial question, of course,

12   was what effort you made to serve the Respondent with

13   the motion.

14         MR. LANPHER:  And, Your Honor, we provided

15   that to the Respondent's Counsel the day it was filed.

16         THE COURT:  So is it a fair summary of your

17   request, that the petitioner now asks that the Court

18   enter the show cause order and authorize you to serve

19   -- authorize Petitioner to serve the show cause order

20   by delivering it by hand to the Respondent's local

21   counsel?

22         MR. LANPHER:  That's exactly correct, Your

23   Honor.

24         THE COURT:  Are you satisfied that you have

25   provided the Court with authorities in support of that

1    request?

2          MR. LANPHER:  Your Honor, I can orally

3    present authorities.  If the Court would prefer to

4    receive a written brief on this issue, we can provide

5    one.

6          If I may, Your Honor?

7       (Pause.)

8          MR. LANPHER:  As I mentioned, the applicable

9    rule here, for service on a foreign entity, is Rule

10   4(f) of the Rules of Civil Procedure, and one of those

11   -- Rule 4(f)(1) permits service to be made via the

12   Hague Convention.  However, 4(f)(3) provides that

13   service can also be made, and I quote:

14          "By other means not prohibited by

15          international agreement, as the Court

16          orders."

17          And so what --

18          What is the reason that the Court ought not

19   expect Petitioner to effect service in accordance with

20   the Hague Convention?

21          MR. LANPHER:  Your Honor, I think -- there is

22   no requirement under the law, that a petitioner proceed

23   under the Hague Convention.

24          THE COURT:  That was not my question.

25          My question is, why should the Court not

1  require that you do so?

2          MR. LANPHER:  Because the point of service,

3  as the Supreme Court has indicated, is to ensure that a

4  Respondent has notice of action, and has an opportunity

5  to be heard.

6          In this case, in this instance, there is no

7  question that the Respondent is well aware of this

8  action.  They have been quoted in the press speaking

9  about this action.  They have --

10          THE COURT:  You're not suggesting that that

11  relieves you, the Petitioner, of the obligation to

12  serve the Respondent, are you?

13          MR. LANPHER:  No, we're not, but nor is there

14  any specific obligation that we serve the Respondent

15  through the Hague Convention, but the law clearly

16  permits service by any other means that the Court deems

17  appropriate, as long as it's not prohibited by some

18  other provision of law, and in this case, what we have

19  -- as we set out in our papers, we have an ongoing

20  fraud.  Time is of the essence.

21          There's no question that the Respondent is

22  well aware of this, and ultimately what they would

23  suggest -- Let me start that differently.

24          To serve through the Hague Convention invites

25  delay, and we're talking months and months and months

1   for us to send documents to China, through a Chinese

2   agency, also that those documents can get back here to

3   the U.S. counsel, who is in the back of this courtroom.

4          What we are proposing is for the Court to

5   order and authorize us to walk those papers straight

6   over to their U.S. counsel.  We think that affects the

7   same purpose, puts the Respondent on notice, allows

8   them to be heard, and is entirely consistent with the

9   law.

10         The Court --

11         THE COURT:  And what is the law to which you

12  refer, since we recognize that Rule 4 contemplates, at

13  least in the first instance, compliance with the

14  requirements of the Hague Convention?

15         MR. LANPHER:  Your Honor, I actually disagree

16  that Rule 4 contemplates compliance with the Hague

17  Convention in the first instance.

18         Rule 4 sets out three alternative means, Rule

19  4(f), rather, sets out three alternative means for

20  service of process.

21         One --

22         THE COURT:  Isn't the first one means

23  authorized by the Hague Convention?

24         MR. LANPHER:  Yes, Your Honor, but that does

25  not mean -- nowhere in that rule does it say, "You must

1    try number one first, number two second, and if those

2    are unsuccessful, turn to number three," and there is

3    case law on this point.

4              If you'll bear with me for a moment, I can --

5              THE COURT:  Is there some reason that the

6    Petitioner didn't brief this in writing?

7              MR. LANPHER:  Yes.  To be candid, Your Honor,

8    we expected that the Respondent would accept service of

9    process because prior to our litigation, they had

10   accepted service of the subpoena, they had indicated

11   their intent to cooperate with the SEC in this

12   investigation --

13             THE COURT:  Since the Petitioner did not file

14   a timely opposition or other response to the motion,

15   you didn't anticipate, after that time, that the

16   Respondent would accept service, did you?

17             MR. LANPHER:  Actually, yes, Your Honor.  We

18   did until a conversation yesterday, when the Respondent

19   made clear that they would not, and again, we

20   understand that the operative document to which they

21   will have to respond is not our motion for an order to

22   show cause, but the order to show cause itself.  That

23   is the time at which service becomes the key issue, and

24   that is the document to which they would have to

25   respond, not our motion.

1          So we did not anticipate this, and perhaps

2    that's an error on our part.

3          THE COURT:  When you say you, "Didn't

4    anticipate this," what do you mean?

5          MR. LANPHER:  We didn't anticipate that there

6    would be any dispute that service could be made on

7    their counsel because they had indicated their desire

8    to cooperate and, you know, we can certainly submit a

9    brief on why it's appropriate for the Court to

10   authorize us to serve the order to show cause on the

11   Respondent's Counsel, but that's where we are, and why

12   we had not filed something prior to this.

13         THE COURT:  How much time do you believe you

14   would require to addresses this in writing?

15         MR. LANPHER:  We could have you a brief

16   certainly within a week.  But, Your Honor, I believe

17   still, that the operative document that we would serve

18   the Respondent with is not our application for the

19   order to show cause, it is rather, the order to show

20   cause itself, when and if the Court issues such an

21   order.

22         THE COURT:  We will take a brief recess while

23   the Court considers your request.

24      (Recess at 4:26 p.m., until 4:50 p.m.)

25                   AFTER RECESS

1          THE CLERK:  We're back on the record, Your

2  Honor.

3          THE COURT:  Now, Mr. Lanpher, you indicated

4  that you wish one week from today, in other words until

5  next Friday; is that correct?

6          MR. LANPHER:  Yes, Your Honor.

7          THE COURT:  Friday, October 14th, in order to

8  address the issues which have been the subject of the

9  Court's inquiry.

10         Just so the record is clear, the Court

11  directs you to address two matters, and I will

12  summarize them now.

13         The first is authority for the proposition

14  that the Court can require the Respondent to appear to

15  show cause whether Respondent has not been served and

16  has not appeared through counsel.  Perhaps I should say

17  has not appeared through counsel or otherwise.

18         MR. LANPHER:  We understand, Your Honor.

19         THE COURT:  Very well.  I refer, of course,

20  to the page, it's not numbered, the next to the last

21  page of the application for an order to show cause, the

22  page with the heading, "Requested Relief", at the top.

23         Do you have that in front of you?

24         MR. LANPHER:  Yes, Your Honor.

25         THE COURT:  The first request, of course, is

1    that the Court enter an order to show cause in the form

2    submitted, and the matter that -- the first matter that

3    I will ask you to address is the authority for the

4    Court to do -- the authority for the proposition that

5    the Court could do so, where the Respondent has not

6    been served and has not appeared.

7               MR. LANPHER:  Understood.

8               THE COURT:  Very well.

9               The second matter that the Court will direct

10   that you address in this memorandum, is the authority

11   in support of your request that service be permitted

12   pursuant to Rule 4(f)(3) of the Federal Rules of Civil

13   Procedure, rather than 4(f)(1).

14              MR. LANPHER:  Yes, Your Honor.

15              THE COURT:  In other words, through the

16   alternative means, rather than in accordance with the

17   Hague Convention.

18              MR. LANPHER:  I understand.

19              THE COURT:  Now, pending the Court's review

20   of this -- and we will call this a memorandum,

21   "Memorandum of Law."

22              Pending the Court's consideration of the

23   memorandum of law, further consideration of the

24   application will be stayed.  And by, "The application",

25   I mean document number one, the application for an

1   order to show cause.

2        MR. LANPHER:  Understood.

3        THE COURT:  Very well.  Thank you, very much.

4        MR. LANPHER:  Thank you, Judge, and have a

5   pleasant week.

6        THE COURT:  Our ECF entry for today will

7   indicate that we conducted a status hearing, and that

8   the Court directed that counsel for the Movant, or

9   Petitioner, file a memorandum to address the matter as

10  set forth by the Court on the record, and that the

11  petitioner do so by -- Is next Friday still sufficient

12  time?

13        MR. LANPHER:  Yes, Your Honor.

14        THE COURT:  Very well.  By next Friday,

15  October 14th.

16        MR. LANPHER:  Thank you, Judge.

17        THE COURT:  Very well.  Thank you, very much.

18      (Proceedings concluded at 4:53 p.m.)

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____        October 15, 2011

STEPHEN C. BOWLES