**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Petitioner, )<br>)<br>-v.- )<br>)<br>DELOITTE TOUCHE TOHMATSU )<br>CPA LTD., )<br>)<br>Respondent. )<br>_____ ) | Miscellaneous Action<br>No. 11-0512 GK/DAR |

**RESPONDENT DELOITTE TOUCHE TOHMATSU CPA LTD.'S**
**MEMORANDUM IN REPLY TO PETITIONER'S**
**OPPOSITION TO MOTION TO CLARIFY THE**
**COURT'S ORDER TO SHOW CAUSE**

Pursuant to this Court's January 20, 2012 minute order, Respondent Deloitte Touche Tohmatsu CPA Ltd. ("DTTC"), by undersigned counsel, respectfully submits this Memorandum in Reply to Petitioner Securities and Exchange Commission's ("SEC") Opposition to DTTC's Motion to Clarify the Court's Order to Show Cause (Document No. 14 ("Opposition" or "Opp.")).[1]

The SEC argues that the Court need not clarify its Order to Show Cause and Memorandum Opinion and Order ("Opinion") because, according to the SEC, the Court "plainly authorized" email service on US counsel for DTTC and any "claimed lack of clarity is illusory." (Opp. at 1.) The basis for the SEC's contention is that the Court used the word "application" when it declined to rule on service in its Opinion and that the Order to Show Cause is different

---

[1] DTTC files this Reply and appears through counsel subject to its objections to service of the Order to Show Cause and related documents, to personal jurisdiction, to venue, and to subject matter jurisdiction. DTTC expressly reserves its right, at the appropriate time, to raise these objections through motion, responsive pleading, or otherwise.

from the "Application." In making this argument, the SEC overlooks the fact that the Court in its Opinion expressly referenced and refused to rule on the question of whether the Order to Show Cause (obtained *ex parte*) could be served by the SEC in a manner inconsistent with the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). In its Memorandum of Law in Further Support of its Application for Order to Show Cause (Document No. 7 (the "Service Memorandum")) the SEC argued at length (at pages 5-13) that "the Court . . . authorize that *service of the Order to Show Cause* be effectuated on the Respondent (a foreign entity) by the SEC's providing a copy of the signed Order to Show Cause to the Respondent's U.S. counsel." (Document No. 7, Service Memorandum at 1 (emphasis added).) In its Opinion, however, the Court noted that it had "no occasion to make findings" and explicitly declined to address the SEC's arguments concerning service of the Order to Show Cause or the pages of the Service Memorandum containing those arguments. (Opinion, Document No. 10 at 3 ("The court thus has no occasion to make findings with respect to the provision of the Federal Rules of Civil Procedure would govern service of the application. *See* Petitioner's [Service] Memorandum at 5-13.").) Thus, the natural reading of the SEC's Service Memorandum and the Court's Opinion would appear to indicate that the Court was not ruling on issues of service—as to the Application or the Order to Show Cause.

This reading of the Court's actions is both logical and sensible. The Court ruled on what it had to rule on prior to any service—that the Order to Show Cause could be issued *ex parte*—and no more. In its Opposition, the SEC attempts to take advantage of the apparent ambiguity between the Court's Opinion and the Order to Show Cause, asserting that clarification is unnecessary and that the Court somehow blessed the SEC's desire to serve the Order to Show

2

Cause without regard to the requirements of the Hague Convention. As the Court recognized in *sua sponte* raising whether service under the Hague Convention was required (*see* Hr'g Tr. at 6-7, attached as Ex. A to Document No. 13 (Motion to Clarify the Court's Order to Show Cause)) and the SEC implicitly acknowledged by devoting nine pages of its *ex parte* briefing to service (*see* Document No. 7, Service Memorandum at 5-13), issues of international service are complex and important. Indeed, the issue of service is particularly significant in this case given that the fundamental merits issues presented by the SEC's application involved both service on counsel and the sovereignty of the mainland of the People's Republic of China ("PRC"): whether an SEC subpoena served on counsel for DTTC—a citizen of the PRC—can require DTTC to produce documents located in the PRC in violation of PRC law and whether this Court should order a private party like DTTC to violate its local laws. And, in fact, the issue presented by the SEC's application—how the SEC can obtain documents from PRC accounting firms for use in its investigations involving SEC registrants domiciled in the PRC—is the subject of ongoing, face-to-face negotiations between the SEC and representatives of the PRC government, the most recent of which occurred just two weeks ago here in Washington, D.C. Given the sensitive, sovereign-to-sovereign issues presented by this matter, it is surprising that the SEC opposes clarification, hinging its argument that an agency of the United States Government can ignore the United States' treaty obligations to the PRC as set forth in the Hague Convention based solely on the fact that the Court used the term "application" in its Opinion and then signed the form Order to Show Cause that the SEC submitted. DTTC believes that this threshold issue is worthy of clarification.

    Accordingly, if the Court clarifies that it did not intend to authorize service on counsel by email, the SEC is then left in the same position with respect to the Order to Show Cause as any

plaintiff would find itself in determining how best to serve its complaint.  The SEC can stand on its email service or it can attempt to effect service pursuant to the Hague Convention.  If the SEC intends to rely on email service, DTTC can brief the threshold issue of service fully before the parties and the Court address the underlying merits questions raised in the SEC's Application.  This is the most efficient manner in which to proceed.  To date, only the SEC has briefed service, and on an *ex parte* basis.  Full briefing on the service issue in the context of a motion to quash will allow this Court to resolve the threshold issue of service before turning to the additional and complex merits issues this case raises.  As the SEC itself has pointed out, the Court cannot "turn forthwith to the merits of the case" until the issue of service is resolved.  (Document No. 7, Service Memorandum at 13.)  DTTC would be prepared to provide its arguments concerning service within fourteen days of an order on the instant Motion, and the SEC could be allowed to reply shortly thereafter, minimizing any delay.[2]

Accordingly, for the foregoing reasons and for the reasons set forth in the Motion, DTTC respectfully requests that the Court clarify whether it intended that service of the Order to Show Cause need conform to the requirements of the Hague Convention.

---

[2] Filing a motion directed solely at service is permitted by the Federal Rules.  Although a party normally must raise by motion issues of service with other defenses such as lack of personal jurisdiction or improper venue, because those issues are intertwined with the underlying merits of this proceeding, the Court has the authority to permit briefing on service first.  *See* Fed. R. Civ. P. 12(h)(1) & 81(a)(5) ("These rules apply to proceedings to compel . . . production of documents through a subpoena issued by a United States officer of agency under a federal statute, except as otherwise provided by . . . court order in the proceedings.").  As part of either a joint schedule to be submitted by the parties or as part of DTTC's separate proposed schedule in the event that the parties do not agree on a joint schedule, DTTC will request that the issue of service be briefed initially, should the SEC not effect service of the Show Cause Order through the Hague Convention.

4

5

Dated: Washington, DC                    Respectfully submitted,

    January 25, 2012                    _____/s/Michael D. Warden/_____

                                                    SIDLEY AUSTIN LLP
                                                    Michael D. Warden (419449)
                                                    HL Rogers (974462)

Of counsel:                             Sidley Austin LLP
                                                      1501 K Street, NW
SIDLEY AUSTIN LLP             Washington, DC 20005
Gary Bendinger                  (202) 736-8000
787 Seventh Avenue
New York, NY 10019
(212) 839-5387

David A. Gordon
One South Dearborn
Chicago, IL 60603
(312) 853-7159

*Counsel for Deloitte Touche Tohmatsu CPA Ltd.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Petitioner, | ) Miscellaneous Action ) No. 11-0512 GK/DAR |
| -v.- | ) ) |
| DELOITTE TOUCHE TOHMATSU CPA LTD., | ) ) ) |
| Respondent. | ) ) ) |

**CERTIFICATE OF SERVICE**

I certify that on January 25, 2011, I served, via email, Respondent's Memorandum in Reply to Petitioner's Opposition to DTTC's Motion to Clarify the Court's Order to Show Cause on:

>Mark Lanpher
>Securities and Exchange Commission
>LanpherM@sec.gov

Dated: Washington, DC          Respectfully submitted,

January 25, 2012          _____/s/Michael D. Warden/_____

>SIDLEY AUSTIN LLP
>Michael D. Warden (419449)
>HL Rogers (974462)
>Sidley Austin LLP
>1501 K Street, NW
>Washington, DC 20005
>(202) 736-8000

*Counsel for Deloitte Touche Tohmatsu CPA Ltd.*