UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 68335 / December 3, 2012

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 3426 / December 3, 2012

ADMINISTRATIVE PROCEEDING
File No. 3-15116

| | |
|---|---|
| In the Matter of<br><br>    BDO China Dahua CPA Co., Ltd.;<br>    Ernst & Young Hua Ming LLP;<br>    KPMG Huazhen (Special General Partnership);<br>    Deloitte Touche Tohmatsu Certified Public Accountants Ltd.;<br>    PricewaterhouseCoopers Zhong Tian CPAs Limited<br><br>Respondents. | ORDER INSTITUTING ADMINISTRATIVE PROCEEDINGS PURSUANT TO RULE 102(e)(1)(iii) OF THE COMMISSION'S RULES OF PRACTICE AND NOTICE OF HEARING |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that public administrative proceedings be, and hereby are, instituted pursuant to Rule 102(e)(1)(iii) of the Commission's Rules of Practice against BDO China Dahua CPA Co., Ltd.; Ernst & Young Hua Ming LLP; KPMG Huazhen (Special General Partnership); Deloitte Touche Tohmatsu Certified Public Accountants Ltd.; and PricewaterhouseCoopers Zhong Tian CPAs Limited (collectively "Respondents").[1]

---

[1] Rule 102(e)(1)(iii) provides, in pertinent part, that:

    The Commission may . . . deny, temporarily or permanently, the privilege of appearing or practicing before it . . . to any person who is found…to have willfully violated, or willfully aided and abetted the violation of any provision of the Federal securities laws or the rules and regulations thereunder.

## II.

The Division of Enforcement alleges that:

**A. RESPONDENTS**

1. **BDO China Dahua CPA Co., Ltd.** ("BDO China") is located in Beijing, China, and is a PCAOB-registered member firm of BDO International Limited, a UK company limited by guarantee. BDO China audited the financial statements of an issuer client ("Client A") for the fiscal years ended December 31, 2010 and 2011.

2. **Ernst & Young Hua Ming LLP** (formerly known as Ernst & Young Hua Ming Certified Public Accountants) ("E&Y Beijing") is located in Beijing, China, and is a PCAOB-registered member firm of Ernst & Young Global Limited, a UK private company limited by guarantee. E&Y Beijing was engaged to audit the financial statements of an issuer client ("Client B") for the fiscal year ended December 31, 2010 and another issuer client ("Client C") for the fiscal years ended September 30, 2010 and 2011.

3. **KPMG Huazhen (Special General Partnership)** (formerly known as KPMG Huazhen) ("KPMG Beijing") is located in Beijing, China, and is a PCAOB-registered member firm of KPMG International Cooperative ("KPMG"), a Swiss entity. KPMG Beijing substantially assisted a KPMG affiliate in auditing the financial statements of an issuer client ("Client D") for the fiscal year ended December 31, 2010, another issuer client ("Client E") for the fiscal year ended December 31, 2010, and another issuer client ("Client F") for the fiscal years ended December 31, 2008, 2009 and 2010.

4. **Deloitte Touche Tohmatsu Certified Public Accountants Ltd.** ("DTTC") is located in Shanghai, China, and is a PCAOB-registered member firm of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee. DTTC was engaged to audit the financial statements of an issuer client ("Client G") for the fiscal year ended June 30, 2010.

5. **PricewaterhouseCoopers Zhong Tian CPAs Limited** ("PwC Shanghai") is located in Shanghai, China, and is a PCAOB-registered member firm of PricewaterhouseCoopers International Limited, a UK private company limited by guarantee. PwC Shanghai was engaged to audit the financial statements of an issuer client ("Client H") for the fiscal year ended December 31, 2010 and another issuer client ("Client I") for the fiscal year ended December 31, 2010.

**B.     FACTS**

**Summary**

6.     The Division of Enforcement has ongoing fraud investigations concerning Clients A, B, C, D, E, F, G, H, and I, each of which is a U.S. issuer whose securities were registered with the Commission and whose principal operations were based in the People's Republic of China.

7.     This action stems from Respondents' willful refusal, in response to Commission requests, to provide the Commission with audit workpapers and other materials prepared in connection with audit work or interim reviews performed for Clients A, B, C, D, E, F, G, H, and I, in contravention of their legal obligations as foreign public accounting firms.

**Commission's Section 106 Requests**

8.     On February 1, 2012, pursuant to Section 106 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), as amended by Section 929J of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Section 106"), the Commission served BDO China, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work or interim reviews performed for [Client A]" for the fiscal years ended December 31, 2010.

9.     On April 26, 2012, pursuant to Section 106, the Commission served E&Y Beijing, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work or interim reviews performed for [Client B]" for the fiscal year ended December 31, 2010.

10.     On February 2, 2012, pursuant to Section 106, the Commission served E&Y Beijing, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work or interim reviews performed for [Client C]" for the fiscal years ended September 30, 2010 and 2011.

11.     On February 6, 2012, pursuant to Section 106, the Commission served KPMG Beijing, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work or interim reviews performed for [Client D]" for the fiscal year ended December 31, 2010.

12.     On February 9, 2012, pursuant to Section 106, the Commission served KPMG Beijing, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work or interim reviews performed for [Client E]" for the fiscal year ended December 31, 2010.

13.     On February 3, 2012 pursuant to Section 106, the Commission served KPMG Beijing, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit reports issued, audit work

performed, or interim reviews conducted for [Client F]" for the fiscal years ended December 31, 2008, 2009, and 2010.

14. On February 14, 2012, pursuant to Section 106, the Commission served DTTC, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work or interim reviews performed for [Client G]" for the fiscal year ended June 30, 2010.

15. On February 8, 2012 pursuant to Section 106, the Commission served PwC Shanghai, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work or interim reviews performed for [Client H]" for the fiscal year ended December 31, 2010.

16. On February 16, 2012, pursuant to Section 106, the Commission served PwC Shanghai, through its designated U.S. agent for service of Section 106 requests, with a request for "[a]ll audit work papers and all other documents related to any audit work performed for [Client I]" for the fiscal year ended December 31, 2010.

17. Each of the Respondents has informed the Commission that it will not produce the documents to the Commission as requested in the Section 106 requests because, among other things, Respondents interpret the law of the People's Republic of China as prohibiting Respondents from doing so.

18. As of the date of this Order, the Commission does not have possession of the audit workpapers and other relevant documents sought in any of the Section 106 requests.

## C. **VIOLATIONS**

19. Section 106(b) of Sarbanes-Oxley directs a foreign public accounting firm that "issues an audit report, performs audit work, or conducts interim reviews" to "produce the audit workpapers of the foreign public accounting firm and all other documents of the firm related to any such audit work or interim review" to the Commission upon request.

20. A willful refusal to comply, in whole or in part, with a request by the Commission under Section 106 is a violation of Sarbanes-Oxley. *See* Section 106(e).

21. A violation of Sarbanes-Oxley constitutes a violation of the Securities Exchange Act of 1934 ("Exchange Act"). *See* Sarbanes-Oxley Section 3(b)(1).

22. BDO China has willfully refused to provide the Commission with its audit workpapers and all other documents relating to BDO China's audit or interim review work for Client A.

23. E&Y Beijing has willfully refused to provide the Commission with its audit workpapers and all other documents relating to E&Y Beijing's audit or interim review work for Client B.

24. E&Y Beijing has willfully refused to provide the Commission with its audit workpapers and all other documents relating to E&Y Beijing's audit or interim review work for Client C.

25. KPMG Beijing has willfully refused to provide the Commission with its audit workpapers and all other documents relating to KPMG Beijing's audit or interim review work for Client D.

26. KPMG Beijing has willfully refused to provide the Commission with its audit workpapers and all other documents relating to KPMG Beijing's audit or interim review work for Client E.

27. KPMG Beijing has willfully refused to provide the Commission with its audit workpapers and all other documents relating to KPMG Beijing's audit or interim review work for Client F.

28. DTTC has willfully refused to provide the Commission with its audit workpapers and all other documents relating to DTTC's audit or interim review work for Client G.

29. PwC Shanghai has willfully refused to provide the Commission with its audit workpapers and all other documents relating to PwC Shanghai's audit or interim review work for Client H.

30. PwC Shanghai has willfully refused to provide the Commission with its audit workpapers and all other documents relating to PwC Shanghai's audit or interim review work for Client I.

31. As such, Respondents have each willfully violated Section 106 of Sarbanes-Oxley and therefore also the Exchange Act.

32. As a result of the conduct described above, it is appropriate that this proceeding be brought pursuant to Rule 102(e)(1)(iii) of the Commission's Rules of Practice to determine whether Respondents should be censured or denied the privilege of appearing and practicing before the Commission for having willfully violated Section 106 of Sarbanes-Oxley.

### III.

In view of the allegations made by the Division of Enforcement, the Commission deems it appropriate and in the public interest that public administrative proceedings be instituted to determine:

**A.** Whether the allegations set forth above are true and, in connection therewith, to afford Respondents an opportunity to establish any defenses to such allegations;

    **B.**    What, if any, remedial action is appropriate against Respondents pursuant to Rule 102(e)(1)(iii) of Commission's Rules of Practice.

### IV.

IT IS ORDERED that a public hearing for the purpose of taking evidence on the questions set forth in Section III hereof shall be convened at a time and place to be fixed, and before an Administrative Law Judge to be designated by further order as provided by Rule 110 of the Commission's Rules of Practice, 17 C.F.R. § 201.110.

IT IS FURTHER ORDERED that each Respondent shall file an Answer to the allegations contained in this Order within twenty (20) days after service of this Order, as provided by Rule 220 of the Commission's Rules of Practice, 17 C.F.R. § 201.220.

If any Respondent fails to file the directed answer, or fails to appear at a hearing after being duly notified, such Respondent may be deemed in default and the proceedings may be determined against such Respondent upon consideration of this Order, the allegations of which may be deemed to be true as provided by Rules 155(a), 220(f), 221(f) and 310 of the Commission's Rules of Practice, 17 C.F.R. §§ 201.155(a), 201.220(f), 201.221(f) and 201.310.

Under the authority conferred by Rule 141(a)(2) of the Commission's Rules of Practice, 17 C.F.R. § 201.141(a)(2), this Order shall be served upon Respondents through the respective domestic registered public accounting firms or other United States agents that Respondents have designated for service under Section 106(d) of Sarbanes-Oxley, 15 U.S.C. § 7216(d), or by any other method reasonably calculated to give notice to a Respondent, provided that the other method of service used is not prohibited by the law of the foreign country in which the Respondent is located.

IT IS FURTHER ORDERED that the Administrative Law Judge shall issue an initial decision no later than 300 days from the date of service of this Order, pursuant to Rule 360(a)(2) of the Commission's Rules of Practice.

In the absence of an appropriate waiver, no officer or employee of the Commission engaged in the performance of investigative or prosecuting functions in this or any factually related proceeding will be permitted to participate or advise in the decision of this matter, except as witness or counsel in proceedings held pursuant to notice. Since this proceeding is not "rule making" within the meaning of Section 551 of the Administrative Procedure Act, it is not deemed subject to the provisions of Section 553 delaying the effective date of any final Commission action.

By the Commission.

                                            Elizabeth M. Murphy
                                            Secretary