UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

RECEIVED
DEC 07 2012
OFFICE OF THE SECRETARY

ADMINISTRATIVE PROCEEDING
File No. 3-15116

---

**In the Matter of**

BDO China Dahua CPA Co., Ltd.;

Ernst & Young Hua Ming LLP;

KPMG Huazhen (Special General Partnership);

Deloitte Touche Tohmatsu Certified Public Accountants Ltd.;

PricewaterhouseCoopers Zhong Tian CPAs Limited

**Respondents.**

---

## DIVISION OF ENFORCEMENT'S MOTION TO CONSOLIDATE

The Division of Enforcement ("Division"), by and through the undersigned counsel, pursuant to Rule 201 of the Commission's Rules of Practice, moves for an order consolidating this proceeding with the proceeding *In the Matter of Deloitte Touche Tohmatsu Certified Public Accountants Ltd.*, File No. 3-14872 ("DTTC Proceeding"), presently before Judge Cameron Elliot. As explained below, this proceeding and the DTTC Proceeding present the same or similar legal issues and similar fact patterns, and the legal questions commonly raised by these two OIPs are best addressed by one Hearing Officer in one administrative proceeding. Consolidation will avoid duplicative litigation and potentially conflicting initial decisions in the proceedings, facilitate consistent treatment of the five audit firm Respondents based on similar

conduct, and provide one record for potential appeal to the Commission to the extent a party deems such appeal appropriate.

## BACKGROUND

### 1. This Proceeding

The Respondents in this proceeding are five foreign public accounting firms registered with the Public Company Accounting Oversight Board ("PCAOB") that variously have performed audit work for nine different U.S. issuer clients whose securities were registered with the SEC and whose principal operations were based in the People's Republic of China ("PRC"). *See* OIP dated December 3, 2012 ("OIP") ¶¶ 1-7. Each of the nine U.S. issuers has been involved in an ongoing fraud investigation by the SEC. *Id.* ¶ 6.

The OIP alleges that the Commission requested Respondents to provide audit workpapers and other materials prepared in connection with audit work they variously performed for the U.S. issuers, under Section 106 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), as amended by Section 929J of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Section 106"). OIP ¶¶ 7-16. In response to these requests, Respondents informed the Commission that they would not produce the requested documents because Respondents interpret PRC law as prohibiting them from doing so. *Id.* ¶¶ 17. The OIP contends that, based on this conduct, each Respondent willfully refused to provide the requested documents in violation of both the firm's obligations under Section 106 and the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* ¶¶ 19-32; Sarbanes-Oxley Section 3(b)(1), 15 U.S.C. 7202(b)(1).

The Commission instituted this proceeding under Rule 102(e)(1)(iii) of its Rules of Practice to determine whether Respondents should be censured or denied the privilege of appearance and practice before the Commission based on such conduct. OIP ¶ 32.

2

### 2. The DTTC Proceeding

The allegations against Respondents in this proceeding largely mirror the allegations in the DTTC Proceeding, which was instituted on May 9, 2012. In the DTTC Proceeding, the OIP charges DTTC, also one of the Respondents here, with willfully refusing to provide the Commission with a copy of its workpapers for a client issuer in response to an SEC request under Sarbanes-Oxley Section 106. *See* Second Corrected OIP in the DTTC Proceeding, Release No. 66948 ¶¶ 10-12, 16 (May 9, 2012) (Exhibit 1 hereto). As here, in the DTTC Proceeding the Respondent told the SEC that it would not produce the requested documents because of constraints imposed by PRC law. *Id.* ¶ 11. The Commission has charged DTTC with violating both Sarbanes-Oxley and the Exchange Act through such conduct, *id.* ¶¶14-17, and ordered that a determination be made under Rule 102(e)(1)(iii) as to whether DTTC should be censured or denied the privilege of appearance and practice before the Commission. *Id.* ¶18.[1]

In the DTTC Proceeding, the Respondent has filed an Answer and a Motion to Dismiss, and the Division has filed a brief opposing the Motion to Dismiss. On July 18, 2012, the Division filed an unopposed motion for a six-month stay of those proceedings and a six-month extension of the Initial Decision deadline ("Division Stay Motion"). The Division sought the stay because, at that time, the SEC was attempting to negotiate with China's principal securities regulator, the China Securities Regulatory Commission ("CSRC"), to develop a mechanism by which the SEC could obtain audit workpapers and other documents from audit firms based in China (including DTTC) in connection with enforcement investigations. Division Stay Motion at 3. Those efforts, if successful, would have affected the appropriate resolution of the DTTC Proceeding. *Id.*

---

[1] The Commission's charges against DTTC in this proceeding and the DTTC Proceeding relate to two different U.S. issuers. OIP ¶ 14 (describing charges based on failure to produce documents related to "Client G"); Exhibit 1 ¶¶ 11-12, 16 (describing charges based on failure to produce documents related to "Client A").

3

In an order issued July 19, 2012, the Hearing Officer declined to grant the requested stay for lack of authority under the Rules of Practice, but determined that a six-month postponement of the proceedings was warranted under Rule 161(c)(1). *See* Order dated July 19, 2012 (Exhibit 2 hereto). The Hearing Officer ordered the Division to file a status report on any progress in the matter by January 18, 2013. *See id.*

The Division intends, contemporaneous with the filing of this Motion to Consolidate, to file a status report in the DTTC Proceeding informing the Court that the SEC's negotiations with CSRC have ended unsuccessfully; that SEC staff have concluded that the CSRC is not a viable gateway for the production of audit workpapers from China; and that there is no realistic possibility that international sharing mechanisms will affect the resolution of the DTTC Proceeding.

## ARGUMENT

### A.   This Proceeding and the DTTC Proceeding Should Be Consolidated

This proceeding should be consolidated with the DTTC Proceeding because the two proceedings present the same or similar legal issues and similar fact patterns. Rule 201 of the Commission's Rules of Practice states:

> (a) Consolidation. By order of the Commission or a hearing officer, proceedings involving a common question of law or fact may be consolidated for hearing of any or all the matters at issue in such proceedings. The Commission or the hearing officer may make such orders concerning the conduct of such proceedings as it deems appropriate to avoid unnecessary cost or delay. Consolidation shall not prejudice any rights under these Rules of Practice and shall not affect the right of any party to raise issues that could have been raised if consolidation had not occurred. For purposes of this section, no distinction is made between joinder and consolidation of proceedings.

In both this proceeding and the DTTC Proceeding, the core legal issues are the same: (1) whether a PCAOB-registered foreign public accounting firm that fails to produce audit workpapers and related documents in its possession in response to an SEC request under Section

106, purportedly on grounds that PRC law precludes it from making such productions, "willfully refuses" to produce the documents in violation of the statute; and (2) whether such conduct constitutes a "willful violation" of the Federal securities laws or the rules and regulations thereunder, under Section 102(e)(1)(iii). Similarly, in the event these questions are answered in the affirmative, both proceedings present the additional question of what remedial action should be ordered. In short, in both proceedings the Hearing Officer must determine the legal consequence under the Federal securities laws of Respondents' refusals to produce documents requested by the Commission under Sarbanes-Oxley Section 106 in light of Respondents' contentions about PRC law.

Furthermore, the factual circumstances giving rise to the charges in this proceeding are similar to the factual circumstances underlying the charges in the DTTC Proceeding, and do not warrant separate treatment. The same basic facts gave rise to both proceedings: (1) Respondents performed audit work or interim reviews for various client issuers; (2) SEC staff conducted investigations involving potential financial fraud at these issuers; (3) SEC staff sent each Respondent one or more requests under Section 106 for audit workpapers and related documents relevant to these issuers; and (4) in each instance the Respondent refused to provide the requested document, citing PRC law. There are no facts relating to the charges against any of the Respondents requiring separate treatment in separate proceedings.[2]

The common questions presented are best answered by one Hearing Officer in one administrative proceeding, rather than in two different proceedings. The issues presented are important and have far-reaching implications; resolution of these issues will govern whether and how the SEC can protect its processes in the face of decisions by the largest foreign public

---

[2] To the extent any Respondent asserts additional legal defenses based on factual circumstances that the firm perceives to be unique, any such defenses can be addressed together with the core legal issues affecting all Respondents in one proceeding.

5

accounting firms in China to withhold documents that are essential to the SEC's oversight of audit work for U.S. issuers, as well as to investigating and prosecuting financial fraud. Consolidation of this proceeding with the DTTC Proceeding avoids the risk that different Hearing Officers will reach conflicting decisions on these important issues. By the same token, consolidation would facilitate consistent treatment of the various respondent audit firms based on similar conduct. In particular, consolidation will facilitate a consistent timetable for the imposition of any remedial actions.[3] In addition, consolidation would be more efficient, because it would avoid duplicative work by the Court, at least one of the Respondents (namely DTTC, which is a respondent in both proceedings), and the Division. For example, consolidation would allow the streamlining of any expert declarations or testimony on the topic of Chinese law. Finally, consolidation would generate one record for potential appeal to the Commission to the extent a party deems it appropriate to pursue such an appeal.

Finally, the Commission already has decided to institute this one proceeding that encompasses charges against the five Respondents based on conduct arising from nine different investigations. Thus, the Commission already has determined that the commonality of the legal issues raised by the charges against the five Respondents here warrants unified treatment in one proceeding. There is no valid reason why these charges should not also be consolidated with the other charges against DTTC, based on its conduct involving one additional issuer, that are currently pending in the DTTC Proceeding.

**B.    The Schedules of This Proceeding and the DTTC Proceeding Should Be Aligned**

Although the current deadline for the initial decision in the DTTC Proceeding (March 11, 2013) is shorter than the deadline for the initial decision in this proceeding (on or around October

---

[3] The Division here does not take a position on whether remedial actions should be the same for each Respondent.

1, 2013),[4] the Division respectfully submits that, upon consolidation, the schedules for the two proceedings can and should be aligned through a request for an extension of the deadline in the DTTC Proceeding under Rule 360(a)(3).[5] As noted above, the DTTC Proceeding is still at early stage, with briefing on Respondent's Motion to Dismiss not yet complete. An extension of the deadline in the DTTC Proceeding is warranted irrespective of consolidation, as explained below. Any additional delay of that proceeding's resolution would be justified by the benefit of having all charges against all Respondents, based on similar conduct, decided on a unified basis in one consolidated proceeding. Indeed, the reasons meriting consolidation similarly support an extension.

Additional time for the DTTC Proceeding likely would be appropriate in any event, as it has been on postponed status since July 19, 2012. In its Order issued on that date, the Court in the DTTC Proceeding set a hearing date of February 4, 2013, in the event the matter is not resolved by then.[6] Yet the Division believes that the parties should first undertake dispositive briefing under Rule 250 of the Rules of Practice in these proceedings, and for a hearing to be conducted only as necessary after such briefing. Additional time likely would be required to accommodate this approach in the DTTC Proceeding.

For these reasons, contemporaneous with the filing of this motion, the Division is also filing in the DTTC Proceeding a status report that provides notification of this proceeding and the present Motion to Consolidate, and requests that the CALJ request an extension of time for the Initial Decision in the DTTCP Proceeding under Rule 360(a)(3).

---

[4] Upon information and belief, the first respondent to be served in this proceeding was Ernst & Young Hua Ming LLP, whose designated agent reportedly received the OIP on December 5, 2012.

[5] In the DTTC Proceeding, the July 19, 2012 Order granting the postponement indicated that the Chief Administrative Law Judge will request an extension of the time period for filing the Initial Decision if necessary. See July 19, 2012 Order (Exhibit 2).

[6] Also in the July 19, 2012 Order, the Court extended the deadline for Respondent's reply brief in support of its Motion to Dismiss to January 24, 2013, and scheduled the pre-hearing conference for January 28, 2013.

## CONCLUSION

Based on the foregoing, the Division's motion for an order consolidating this proceeding with the DTTC Proceeding should be granted.

Date: December 7, 2012

Respectfully submitted,

*David Mendel*
David Mendel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-5971
(202) 551-4418
mendeld@sec.gov
COUNSEL FOR DIVISION OF ENFORCEMENT

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, December 7, 2012, I will serve true copies of the foregoing Division of Enforcement's Motion to Consolidate either by e-mail or by first-class mail on the following:

*BY E-MAIL*

The Honorable Carol Fox Foelak
Administrative Law Judge
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-2557
ALJ@sec.gov

*BY FIRST-CLASS MAIL*

BDO China Dahua CPA Co., Ltd.
c/o Barbara Taylor, General Counsel
BDO USA, LLP
100 Park Avenue, 11th Floor
New York, NY 10017

Deloitte Touche Tohmatsu Certified Public Accountants Ltd.
Office of General Counsel
Deloitte LLP
1633 Broadway
New York, NY 10019
Attn: Linda M. Beyer, Associate General Counsel

Ernst & Young Hua Ming LLP
c/o Ernst & Young LLP
1101 New York Avenue, NW
Washington, DC 20005
Attn: Thomas L. Riesenberg, Deputy General Counsel

KPMG Huazhen (Special General Partnership)
c/o Joseph I. Loonan, Esq.
General Counsel
KPMG LLP
757 Third Avenue
New York, NY 10017

PricewaterhouseCoopers Zhong Tian CPAs Limited
Pricewaterhouse Coopers LLP
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011


*COURTESY COPIES BY E-MAIL*

Michael D. Warden, Esq.
mwarden@sidley.com
Gary F. Bendinger, Esq.
gbendinger@sidley.com
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005
*Counsel for Deloitte Touche Tohmatsu Certified Public Accountants Ltd.* (notice of appearance not filed)

Richard A. Martin, Esq.
rmartin@orrick.com
Robert G. Cohen, Esq.
rgcohen@orrick.com
Catharine L. Zurbrugg, Esq.
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
*Counsel for Ernst & Young Hua Ming LLP* (notice of appearance not filed)

Geoffrey F. Aronow, Esq.
geoffrey.aronow@bingham.com
Timothy B. Nagy, Esq.
timothy.nagy@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006
*Counsel for KPMG Huazhen (Special General Partnership)* (notice of appearance not filed)

Michael S. Flynn, Esq.
michael.flynn@davispolk.com
Gina Caruso, Esq.
gina.caruso@davispolk.com
Davis Polk & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
*Counsel for PricewaterhouseCoopers Zhong Tian CPAs Limited* (notice of appearance not filed)

Dated:  December 7, 2012

_____
David Mendel

# EXHIBIT 1
# TO ENFORCEMENT DIVISION'S MOTION TO CONSOLIDATE

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 66948 / May 9, 2012

ADMINISTRATIVE PROCEEDING
File No. 3-14872

| | |
|---|---|
| In the Matter of<br><br>　　Deloitte Touche Tohmatsu<br>　　Certified Public Accountants<br>　　Ltd.,<br><br>Respondent. | SECOND CORRECTED ORDER INSTITUTING ADMINISTRATIVE PROCEEDINGS PURSUANT TO RULE 102(e)(1)(iii) OF THE COMMISSION'S RULES OF PRACTICE AND NOTICE OF HEARING |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate that public administrative proceedings be, and hereby are, instituted pursuant to Rule 102(e)(1)(iii) of the Commission's Rules of Practice against Deloitte Touche Tohmatsu Certified Public Accountants Ltd. ("Respondent" or "D&T Shanghai").

II.

The Division of Enforcement alleges that:

A.  **RESPONDENT**

1.  **Deloitte Touche Tohmatsu Certified Public Accountants Ltd.,** is a public accounting firm, registered with the Public Company Accounting Oversight Board, and located in Shanghai, the People's Republic of China ("PRC"). D&T Shanghai is a Chinese member firm of Deloitte Touche Tohmatsu Limited, a United Kingdom private company ("Global Firm"). Within the PRC, D&T Shanghai is regulated by the Ministry of Finance and the Chinese Securities Regulatory Commission.

## B. FACTS

### Summary

2. This action stems from D&T Shanghai's willful failure, in response to a Commission request, to provide audit work papers despite its legal obligations, as a registered accounting firm, to do so.

### Commission Staff's Efforts to Obtain Audit Work Papers

3. Beginning in April 2010, Commission staff has made extensive efforts to obtain D&T Shanghai's audit work papers connected to the firm's independent audit work for an issuer-client ("Client A") in relation to a Commission investigation into potential accounting fraud.

4. On April 9, 2010, staff served Deloitte LLP, the U.S. member firm of the Global Firm with a subpoena requesting audit work papers relating to the Global Firm's audit of Client A's financial statements for the period January 1, 2008 through April 9, 2010.

5. Between April 13, 2010 and May 18, 2010, staff had several communications with U.S. based counsels for both Deloitte LLP and the Global Firm.

6. Counsel for Deloitte LLP initially informed the staff that Deloitte LLP did not perform any audit work for Client A, that all audit work was conducted by Respondent, and that Deloitte LLP did not have possession, custody, or control of the documents called for by the subpoena.

7. Counsel for Deloitte LLP subsequently informed the staff that Deloitte LLP performed some review work of Client A's periodic reports and produced certain documents relating to this review to the staff.

8. Counsel for the Global Firm informed the staff that the request for audit work papers, as contained in the staff's April 9th subpoena, had been communicated to Respondent, but that Respondent would not produce the relevant audit work papers because of Respondent's interpretation that it was prevented from doing so by PRC law.

9. Commencing in June 2010, Commission staff sought to obtain the relevant audit work papers through international sharing mechanisms, however, these efforts have been unsuccessful.

### Commission Staff's Sarbanes-Oxley Section 106 Request

10. On March 11, 2011, in conjunction with the staff's efforts to obtain the relevant audit work papers through D&T Shanghai's local regulator, pursuant to Section 106 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), as amended by Section 929J of the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Commission staff served D&T Shanghai,

2

through its designated U.S. agent, with a request for "All audit work papers and all other documents related to any audit work or interim reviews performed for [Client A] for the fiscal year ending December 31, 2009."

11. On April 29, 2011, Respondent informed the staff that it would not produce the documents as requested in the Staff's March 11, 2011 Sarbanes-Oxley Section 106 request, because Respondent interpreted PRC law as preventing Respondent from doing so.

12. As of the date of this filing, Commission staff does not have the audit work papers and other relevant documents sought in the Sarbanes-Oxley Section 106 request.

C. **VIOLATIONS**

13. Section 106(b) of Sarbanes-Oxley directs a foreign public accounting firm that "issues an audit report, performs audit work or interim review" to "produce the audit work papers of the foreign public accounting firm and all other documents of the firm related to such audit work" to the Commission upon request.

14. A willful refusal to comply, in whole or in part, with a request by the Commission under Section 106 is a violation of Sarbanes-Oxley. *See* Section 106(e).

15. A violation of Sarbanes-Oxley constitutes a violation of the Securities Exchange Act of 1934 ("Exchange Act"). *See* Sarbanes-Oxley Section 3.

16. D&T Shanghai has willfully refused to provide the Commission with its audit work papers and all other documents relating to D&T Shanghai's audit work for Client A.

17. As such, D&T Shanghai has willfully violated Sarbanes-Oxley and the Exchange Act.

18. As a result of the conduct described above, it is appropriate that this proceeding be brought pursuant to Rule 102(e)(1)(iii) of the Commission's Rules of Practice to determine whether D&T Shanghai should be censured or denied the privilege of appearance and practice before the Commission for having willfully violated Section 106 of Sarbanes-Oxley.

### III.

In view of the allegations made by the Division of Enforcement, the Commission deems it appropriate that public administrative proceedings be instituted to determine:

A. Whether the allegations set forth above are true and, in connection therewith, to afford D&T Shanghai an opportunity to establish any defenses to such allegations; and

B. What, if any, remedial action is appropriate and in the public interest against D&T Shanghai pursuant to Rule 102(e)(1)(iii) of Commission's Rules of Practice.

### IV.

IT IS ORDERED that a public hearing for the purpose of taking evidence on the questions set forth in Section III hereof shall be convened at a time and place to be fixed, and before an Administrative Law Judge to be designated by further order as provided by Rule 110 of the Commission's Rules of Practice, 17 C.F.R. § 201.110.

IT IS FURTHER ORDERED that D&T Shanghai shall file an Answer to the allegations contained in this Order within twenty (20) days after service of this Order, as provided by Rule 220 of the Commission's Rules of Practice, 17 C.F.R. § 201.220.

If D&T Shanghai fails to file the directed answer, or fails to appear at a hearing after being duly notified, D&T Shanghai may be deemed in default and the proceedings may be determined against D&T Shanghai upon consideration of this Order, the allegations of which may be deemed to be true as provided by Rules 155(a), 220(f), 221(f) and 310 of the Commission's Rules of Practice, 17 C.F.R. §§ 201.155(a), 201.220(f), 201.221(f) and 201.310.

This Order shall be served forthwith upon D&T Shanghai through its designated agent.

IT IS FURTHER ORDERED that the Administrative Law Judge shall issue an initial decision no later than 300 days from the date of service of this Order, pursuant to Rule 360(a)(2) of the Commission's Rules of Practice.

By the Commission.

*Jill M. Peterson*
Elizabeth M. Murphy
Secretary

**By: Jill M. Peterson
Assistant Secretary**

# EXHIBIT 2
# TO ENFORCEMENT DIVISION'S MOTION TO CONSOLIDATE

ADMINISTRATIVE PROCEEDING
FILE NO. 3-14872

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
July 19, 2012

In the Matter of

DELOITTE TOUCHE TOHMATSU
  CERTIFIED PUBLIC ACCOUNTANTS LTD.

ORDER

      The Securities and Exchange Commission (Commission) instituted this proceeding with a Second Corrected Order Instituting Administrative Proceedings (OIP) on May 9, 2012, pursuant to Rule 102(e)(1)(iii) of the Commission's Rules of Practice. Respondent filed a June 20, 2012, Motion to Dismiss the OIP (Motion to Dismiss), and the Division of Enforcement (Division) filed an Opposition on July 5, 2012. Respondent's reply brief is due on July 27, 2012, and a prehearing conference is scheduled for August 10, 2012.

      On July 18, 2012, the Division filed an Unopposed Motion for a Stay of the Proceedings (Motion for Stay), seeking a six-month stay of this proceeding and a six-month extension of the time period for filing the Initial Decision. The Division states that earlier this month, the Chairman of the Commission discussed with the Chairman of the China Securities Regulatory Commission (CSRC) and other Chinese government officials the need to develop a mechanism for the Commission to obtain documents from audit firms in China, including Respondent, and these negotiations are continuing, including with respect to the documents at issue in this proceeding. The Division represents that if Commission staff satisfactorily obtains certain documents from the CSRC through these renewed negotiations, the Division would likely seek to dismiss this proceeding.

      The Division's Motion for Stay is denied. The Commission's Rules of Practice do not provide me with the authority to stay this proceeding in these circumstances. See 17 C.F.R. §§ 201.161(c)(2), .210(c)(3).[1] However, good cause has been shown that in order to reach an amicable resolution of this matter, a six-month postponement is necessary. See 17 C.F.R. § 201.161(c)(1).

      Accordingly, the time for Respondent to file a reply brief in connection with its Motion to Dismiss is extended until January 24, 2013, and the prehearing conference is postponed until

---

[1] Additionally, the Rules only provide the Commission with the authority to issue an order extending the time period for filing the Initial Decision, after the Chief Administrative Law Judge (CALJ) submits a motion requesting such extension. See 17 C.F.R. § 201.360(a)(3).

January 28, 2013, at 9:30 a.m. EST in the Commission Headquarters Offices, Hearing Room 2, 100 F St NE, Washington, DC 20549. See 17 C.F.R. §§ 201.161, .221.

No later than January 18, 2013, the Division shall file a status report to apprise me of any progress in this matter. If at that time this matter is not resolved, the proceeding will continue on an expedited basis, and, if necessary, the hearing will commence on February 4, 2013, at 9:30 a.m. EST in the Commission Headquarters Offices, Hearing Room 2, 100 F St NE, Washington, DC 20549.

The parties are encouraged to continue sending electronic copies of any filings to each other, and to this Office at alj@sec.gov. If necessary, the CALJ will request an extension of the time period for filing the Initial Decision.

SO ORDERED.

                                            Brenda P. Murray
                                            Chief Administrative Law Judge
                                            for
                                            Cameron Elliot
                                            Administrative Law Judge