**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | Miscellaneous Action No. 11-0512 GK/DAR |
| -v.- | ) ) | |
| DELOITTE TOUCHE TOHMATSU CPA LTD., | ) ) ) | |
| Respondent. | ) ) | |
| _____ | ) | |

## OBJECTIONS OF DELOITTE TOUCHE TOHMATSU CPA LLP TO MAGISTRATE JUDGE'S MARCH 4, 2013 ORDER

Miles N. Ruthberg (255836)
Jamie L. Wine (502548)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Tel: (212) 906-1200

Michael D. Warden (419449)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000

Gary F. Bendinger, *pro hac vice*
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300

Date:  March 11, 2013

Attorneys for Respondent
Deloitte Touche Tohmatsu CPA Ltd.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 4

      A.      The SEC Initiates a Subpoena Enforcement Action Against DTTC, But
             Then Stays the Action to Negotiate with the Chinese Authorities ......................... 4

      B.      The SEC Initiates Profession-Wide Administrative Proceedings and Seeks
             to Terminate the Stay in This Action. ..................................................................... 5

STANDARD OF REVIEW ........................................................................................................... 8

ARGUMENT ................................................................................................................................ 9

      A.      The Magistrate Judge Applied the Wrong Legal Standard in the March 4
             Order ....................................................................................................................... 9

      B.      The Magistrate Judge's Termination of the Stay Was Based on the
             Application of the Wrong Legal Standard ............................................................. 12

      B.      Based on the Application of the Wrong Legal Standard, the Magistrate
             Judge Ordered an Immediate Hearing on the Merits Without Opportunity
             for Discovery or Evidentiary Hearing ................................................................... 14

CONCLUSION ........................................................................................................................... 18

## TABLE OF AUTHORITIES

### CASES

Page(s)

*America Center for Civil Justice v. Ambush*,
    794 F. Supp. 2d 123 (D.D.C. 2011) .........................................................................9

*Arakelian v. National Western Life Insurance Co.*,
    126 F.R.D. 1 (D.D.C. 1989)...............................................................................9, 13

*Banks v. Office of the Senate Sergeant-at-Arms & Doorkeeper*,
    226 F.R.D. 113 (D.D.C. 2005)...............................................................................8

*Boca Investerings Partnership v. United States*,
    31 F. Supp. 2d 9 (D.D.C. 1998)..............................................................................8

*Evans v. Atwood*,
    Civ. No. 96-2746, 1999 U.S. Dist. LEXIS 17545 (D.D.C. Sept. 29, 1999) ............................9

*FTC v. Atlantic Richfield Co.*,
    567 F.2d 96 (D.C. Cir. 1977) ......................................................................... 14-15

*Gunter v. Ridgewood Energy Corp.*,
    32 F. Supp. 2d 162 (D.N.J. 1998) ...........................................................................8

*Haines v. Liggett Group, Inc.*,
    975 F.2d 81 (3d Cir. 1991)......................................................................................8

*In re Natural Gas Commodities Litigation*,
    235 F.R.D. 241 (S.D.N.Y. 2006) ............................................................................8

*In re Sealed Case*,
    825 F.2d 494 (D.C. Cir. 1987) ........................................................................1, 11

*In re United Mine Workers of America Employee Benefit Plans Litigation*,
    159 F.R.D. 307 (D.D.C. 1994)...............................................................................9

*In re Westinghouse Electric Corp. Uranium Contracts Litigation*,
    563 F.2d 992 (10th Cir. 1977) ..............................................................................11

*Kickapoo Tribe of Indians v. Babbitt*,
    43 F.3d 1491 (D.C. Cir. 1995)................................................................................8

*Kifafi v. Hilton Hotels Retirement Plan*,
    701 F.3d 718 (D.C. Cir. 2012)..........................................................................8, 11

*Minpeco, S.A. v. ContiCommodity Services, Inc.*,
   116 F.R.D. 517 (S.D.N.Y. 1987) ....................................................................3, 11

*Neuder v. Battelle Pacific Northwest National Laboratory*,
   194 F.R.D. 289 (D.D.C. 2000)..............................................................................9

*Payne v. District of Columbia*,
   859 F. Supp. 2d 125 (D.D.C. 2012) .......................................................................8

*SEC v. Lavin*,
   111 F.3d 921 (D.C. Cir. 1997)......................................................................3, 4, 14

*SEC v. Minas de Artemisa, S.A.*,
   150 F.2d 215 (9th Cir. 1945) ...............................................................................17

*Sedalcek v. Morgan Whitney Trading Grp., Inc.*,
   795 F. Supp. 329 (C.D. Cal. 1992) .......................................................................9

*United States v. First National Bank of Chicago*,
   699 F.2d 341 (7th Cir. 1983) ...............................................................................11

*United States v. McCarthy*,
   514 F.2d 368 (3d Cir. 1975).................................................................................15

## OTHER AUTHORITIES

D.D.C. Civ. R. 72.2(C) ................................................................................................8

Fed. R. Civ. P. 72(a) ...............................................................................................1, 8

*In the Matter of BDO China Dahua CPA Co. Ltd.*, A.P. No. 3-15116, Order Instituting
   Proceedings Pursuant to Rule 102(e)(1)(iii) (Dec. 3, 2012) .....................................1, 6

Restatement (Second) of Foreign Relations Law of the United States § 40 (1965) ......................11

Restatement (Third) of Foreign Relations Law § 442(1)(c) (1986) ...........................................3, 11

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2444
   (1971)..........................................................................................................17

Pursuant to Federal Rule of Civil Procedure 72(a), Respondent Deloitte Touche Tohmatsu CPA LLP ("DTTC") respectfully submits these objections to Magistrate Judge Robinson's March 4, 2013 Memorandum Opinion and Order in this subpoena enforcement proceeding brought by the U.S. Securities & Exchange Commission ("SEC") against DTTC.

## PRELIMINARY STATEMENT

In this case, the SEC seeks to embroil this Court in a dispute between the SEC and its counterpart in China, the China Securities Regulatory Commission ("CSRC"). The SEC is requesting that DTTC produce documents in violation of China law and a specific directive by the CSRC. DTTC cannot do so, absent agreement between the SEC and the CSRC, because DTTC would be subject then to severe sanctions in China, including possible criminal sanctions and dissolution of the firm. These are the very circumstances that the D.C. Circuit has said should be avoided. *In re Sealed Case*, 825 F. 2d 494, 498 (D.C. Cir. 1987) ("it causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question").

Intervention in this sensitive international situation is especially unwarranted at this point, since the SEC itself recently brought an omnibus administrative proceeding against all the major China audit firms (including DTTC), which presents the same core issues as this matter, and does so on a profession-wide basis—the only appropriate way to address this problem. *See In the Matter of BDO China Dahua CPA Co. Ltd., et al.*, A.P. No. 3-15116, Order Instituting Proceedings Pursuant to Rule 102(e)(1)(iii) (Dec. 3, 2012). In essence, the SEC is asking this Court to compel DTTC to produce documents in violation of China law—even though the SEC knows such documents cannot be produced, has been negotiating with the CSRC for more than a year to permit the production of such documents, and has filed the parallel profession-wide proceeding to determine whether and what sanction should be imposed because the China

government has prohibited the production of documents by the China firms to the SEC.  There is no reason for haste in pushing ahead here, which will be contrary to considerations of consistency, judicial economy, and fairness to DTTC, as well as important principles of international comity.

Nonetheless, on March 4, 2013, Magistrate Judge Deborah A. Robinson (the "Magistrate Judge") issued a memorandum opinion and order ("March 4 Order") granting the SEC's motion to lift a six-month stay that the Court previously had put in place *at the SEC's own request*.  The March 4 Order also denied DTTC's motion to extend the stay, and further ordered on short notice that "the parties shall appear … at 2:30 p.m. on Wednesday, March 13, 2013 for a hearing with respect to the merits of the pending Application for Order Requiring Compliance with Subpoena" ("March 13 Hearing").  DTTC respectfully submits that the March 4 Order was contrary to law and clearly erroneous, both in lifting the stay and in setting an immediate hearing on the merits.

The central error of law is the Magistrate Judge's failure to apply the correct legal standard in determining the enforceability of a subpoena that requires the recipient to violate foreign law on foreign soil—an issue that is central both to the consideration of the stay and to any merits hearing.  The March 4 Order was premised on the Court's mistaken view that it has a "limited role" here.  *See, e.g.*, March 4 Order at 5-6 ("This Court has a limited role in a proceeding to enforce an administrative subpoena: 'it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'").  But, in cases such as this one, consistent with the D.C. Circuit's admonition in *In re Sealed Case*, well-settled law requires this Court to apply a complex, multi-factor test—derived from the Restatement of Law of Foreign Relations—to determine whether to order compliance

2

with a subpoena.  *See Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 116 F.R.D. 517, 522 (S.D.N.Y. 1987); Restatement (Third) of Foreign Relations Law § 442(1)(c) (1986).  Indeed, this is the very standard that *both parties* to this action have identified in their papers as the applicable one.

This misapplication of the proper legal standard is the foundation of the two holdings in the March 4 Order that must be set aside:

*First*, DTTC sought to extend the stay of this action in light of the parallel, profession-wide administrative proceeding that is currently addressing the issue of China-based audit firms' inability to produce audit workpapers directly to the SEC without violating China law.  Both the instant action and the administrative proceeding will be required to apply the multi-factor test to determine the enforceability of the document requests at issue in the respective proceedings.  But because the Magistrate Judge misapplied the legal standard, she significantly underestimated the degree of overlap between these parallel cases.  That, in turn, led her to underestimate the risks of potentially inconsistent holdings on this matter of public (and international) importance.  Resting on the misapplication of applicable law, the order to terminate (and not extend) must be set aside.

*Second*, by applying the wrong legal standard to this case, the Magistrate Judge failed to recognize the "special circumstances" that require discovery and an evidentiary hearing, particularly after the SEC's filing of a procedurally improper "reply brief" and numerous supporting declarations during the pendency of the stay, as to which DTTC has not had any opportunity to conduct discovery or file any responsive declarations or briefing.  *SEC v. Lavin*, 111 F.3d 921, 926-27 (D.C. Cir. 1997).  The March 4 Order describes this action as "summary" and the nature of review as "limited," *see* March 4 Order at 5-6, 11, and apparently on that basis

concluded that the matter could be resolved by scheduling an immediate "motion hearing."  But

the failure to recognize the "special circumstances" requiring discovery and the opportunity to

file responsive declarations and briefing, and then if appropriate an evidentiary hearing, is both

contrary to law and  an "abuse of discretion" and calls for the reversal of the March 4 Order.

*Lavin*, 111 F.3d at 926-27.

## BACKGROUND

**A.      The SEC Initiates a Subpoena Enforcement Action Against DTTC, But Then Stays the Action to Negotiate with the Chinese Authorities**

On September 8, 2011, the SEC filed an application (the "Application") with this Court

for an order to show cause and order requiring DTTC to comply with a subpoena related to

services DTTC performed exclusively in China for Longtop Financial Technologies Ltd

("Longtop").[1]  DTTC is a China-based audit firm headquartered in Shanghai, and is supervised

and regulated by the CSRC and China's Ministry of Finance.  As the SEC has been repeatedly

informed, China-based audit firms (like DTTC) are prohibited under China law from producing

their audit workpapers and other documents directly to the SEC, without the China government's

consent; and here the CSRC has issued a specific directive prohibiting production.  In particular,

in October 2011, the CSRC expressly warned DTTC and five other China-based audit firms that

"CPA firms" that "provide audit archives and other documents overseas without authorization

and in violation of the law shall be subject to legal liabilities."  Warden Decl., Exhibit 20

(Document 23-11), at 162-64.  Thus, DTTC (like other China-based audit firms) is unable to

comply with SEC requests for the production of its audit workpapers without exposing DTTC

---

[1]      Although this Court originally referred this action to Magistrate Judge Deborah A. Robinson for "all purposes" (Order, Document 2), it subsequently limited the scope of referral to "full case management" only (Am. Order, Document 5).

4

and its partners to severe sanction in China, including possible imprisonment of DTTC's personnel and dissolution of the firm.

It appears the SEC has recognized that, given these circumstances, a negotiated solution with the Chinese authorities was the only path by which the SEC could gain access to DTTC's audit workpapers.  Thus, on two separate occasions, the SEC sought to delay or stay this case—without objection from DTTC—while it pursued such a negotiated resolution.  On May 18, 2012, the SEC sought a 60-day extension for the SEC to reply to DTTC's arguments on the grounds that "the SEC is engaged in an ongoing dialogue with the CSRC on various matters," and "[t]hat dialogue could impact the appropriate resolution in this case."  Unopposed Motion for Extension of Time to File Reply Brief and to Adjourn the Hearing (Document 27).  Then on July 18, 2012, the SEC sought a six-month stay "to permit [its] negotiations [with the CSRC] to continue and, more specifically, to permit the SEC additional time to develop a mechanism by which the SEC can obtain audit workpapers and other documents from the CSRC."  Unopposed Motion for Stay of this Action (Document 29).  On August 7, 2012, the Magistrate Judge granted the six-month stay of this action and on August 9, 2012, with the SEC's consent, denied without prejudice its Application.

**B.**     **The SEC Initiates Profession-Wide Administrative Proceedings and Seeks to Terminate the Stay in This Action.**

At some point during the negotiations with the CSRC, the SEC apparently determined they were not proving fruitful.  Accordingly, on December 3, 2012, pursuant to Rule 102(e)(1)(iii) of the SEC's Rules of Practice, the SEC instituted profession-wide administrative proceedings against the five major audit firms in China: DTTC, KPMG Huazhen (Special General Partnership), PricewaterhouseCoopers Zhong Tian CPAs Limited, Ernst & Young Hua

Ming LLP, and BDO China Dahua CPA Co. Ltd.[2]  In that proceeding, the SEC seeks to sanction each of these firms for their purported failure to comply with requests for audit workpapers and other documents (regarding investigations other than Longtop) under Section 106 of the Sarbanes-Oxley Act.  As here, in each case the firms are unable to produce the documents without (1) violating China prohibitions regarding the disclosure of audit workpapers and (2) exposing the firms and their personnel to the risk of severe and potentially criminal sanctions in China.

The same day the SEC instituted the Consolidated Omnibus Proceeding, the SEC also filed in this Court: (1) a motion to terminate the stay that the Magistrate Judge had instituted at the SEC's request; (2) a renewed Application for Order Requiring Compliance with Subpoena; and (3) a purported "Reply Memorandum" in support of its application.  The Reply appended to it a number of new supporting declarations asserting new information that the SEC had never before proffered in this action through two declarations from members of the SEC's Office of International Affairs concerning the SEC's interactions and negotiations with the CSRC and a declaration from law professor Donald Clarke concerning China law.  The SEC filed all of these materials while this action was still stayed.[3]

---

[2]      The SEC had previously initiated administrative proceedings on May 9, 2012 against DTTC alone in connection with its inability to produce requested audit workpapers that were located in China (the "DTTC Proceeding").  The DTTC Proceeding involved facts and issues identical to those presented in the administrative proceeding commenced on December 3, 2012.  Accordingly, the SEC successfully moved to consolidate the two proceedings (together, the "Consolidated Omnibus Proceeding") on the grounds that "[c]onsolidation will avoid duplicative litigation and potentially conflicting initial decisions in the proceedings, facilitate consistent treatment of the five audit firm Respondents based on similar conduct, and provide one record for potential appeal … to the extent a party deems such appeal appropriate." *See In the Matter of BDO China Dahua CPA Co. Ltd., et al.*, A.P. No. 3-15116, Division of Enforcement's Motion to Consolidate ("Motion to Consolidate") (Dec. 7, 2012), at 1-2.

[3]      As explained in DTTC's Opposition to the Motion to Lift the Stay, this Court's August 9, 2012 Order did not simply stay the present action, but also "denied without prejudice" the SEC's Motion for an Order Requiring Compliance with a Subpoena, and provided that the Motion could be "*re-filed* at any time, including prior to January 18, 2013, if accompanied by a motion to terminate the stay."  (emphasis

DTTC opposed the SEC's attempt to terminate the stay, and itself moved that the stay be extended pending resolution of the Consolidated Omnibus Proceeding.  In the alternative, DTTC moved that the stay remain in place at least until the SEC Administrative Law Judge determined whether, as in the instant action, the SEC was required to enforce in federal court the document requests at issue in the Consolidated Omnibus Proceeding *before* initiating administrative proceedings.  DTTC's position was—and remains—that this action and the Consolidated Omnibus Proceeding present common core legal and factual issues that are best resolved in a coordinated and profession-wide manner.  DTTC also argued that permitting the two proceedings to proceed on independent and parallel tracks would risk piecemeal and inefficient resolution—and potentially inconsistent rulings on critical issues.  DTTC demonstrated that it is unjust to subject DTTC—alone among China audit firms—to the risk of inconsistent obligations in this sensitive context.

On January 29, 2012, the Magistrate held a hearing on the SEC's and DTTC's respective motions regarding the stay, and then, on March 4, 2013, issued a "memorandum opinion and order" granting the SEC's motion to lift the stay.  The March 4 Order also denied DTTC's motion to extend the stay, and further ordered on short notice that "the parties shall appear … at 2:30 p.m. on Wednesday, March 13, 2013 for a hearing with respect to the merits of the pending Application for Order Requiring Compliance with Subpoena" ("March 13 Hearing").  On March 6, 2013, DTTC filed an Emergency Motion to Continue the March 13, 2013 Hearing ("Motion to

---

added).  The SEC's re-filing of its Motion on December 3, 2012 does not—and *cannot*—also operate to re-file the papers previously submitted by DTTC prior to the Court's denial of the SEC's original motion.  Instead, the SEC's re-filing of its Motion necessarily should have meant that DTTC must be allowed to file a responsive pleading or other response, particularly because of the voluminous declarations concerning new factual developments that were attached.  DTTC pressed the need for supplemental briefing in its Opposition to the Motion to Lift the Stay.  *See* Opp. at 5 n.4.

Continue") so that it could obtain meaningful review of its objections to the March 4, Order. The Motion to Continue remains pending at this time.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(a) provides parties with an "unquestioned right" to object to any "unfavorable decision by a magistrate judge." *Banks v. Office of the Senate Sergeant-at-Arms & Doorkeeper*, 226 F.R.D. 113, 118 (D.D.C. 2005). Upon consideration of timely objections under Rule 72(a), the district court "*must* . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a) (emphasis added); Local Civ. R. 72.2(C) (same); *see also Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998) ("The district judge *shall* 'modify or set aside any portion of the . . . order found to be clearly erroneous or contrary to law." (emphasis added) (internal quotation marks omitted)).

The "contrary to law" standard permits "plenary review as to matters of law." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1991); *see also Payne v. District of Columbia*, 859 F. Supp. 2d 125, 131 (D.D.C. 2012) ("The magistrate judge's legal conclusions are reviewed *de novo*."). An order is contrary to law "if the magistrate judge has misinterpreted or misapplied applicable law," *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998), or has "fail[ed] to apply . . . relevant statutes, case law or rules of procedure." *In re Natural Gas Commodities Litig.*, 235 F.R.D. 241, 243-44 (S.D.N.Y. 2006); *see also Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995). To determine whether a magistrate judge "applied the wrong legal standard or otherwise 'misapprehended the underlying substantive law,'" this Court must "consider whether [the magistrate] 'failed to consider a relevant factor' or 'relied on an improper factor,' as well as whether 'the reasons given reasonably support the conclusion.'" *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 725 (D.C.

8

Cir. 2012) (citations omitted); *see, e.g.*, *In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (finding the magistrate judge's misapplication of the work-product doctrine to be "contrary to law").

Further, a decision is "clearly erroneous"—and must be overturned—"when, 'although there is evidence to support [a finding], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Arakelian v. Nat'l W. Life Ins. Co.*, 126 F.R.D. 1, 2 (D.D.C. 1989) (citation omitted).  "This standard has been equated with an abuse-of-discretion standard," *Evans v. Atwood*, Civ. No. 96-2746, 1999 U.S. Dist. LEXIS 17545, at *5 (D.D.C. Sept. 29, 1999) (citation omitted), and applies both "to factual findings and discretionary decisions." *Am. Ctr. for Civil Justice v. Ambush*, 794 F. Supp. 2d 123, 129 (D.D.C. 2011).

Finally, if a magistrate judge has not sufficiently "articulated [the] reasons" for reaching a certain decision, the district court generally "is unable to determine whether [the] determination is clearly erroneous and otherwise contrary to law." *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 295 n.4 (D.D.C. 2000).  In such instances, remand to the magistrate judge for reconsideration is appropriate. *Id.* (citing *Sedalcek v. Morgan Whitney Trading Grp., Inc.*, 795 F. Supp. 329, 332 (C.D. Cal. 1992) (finding "the lack of clarity in [the magistrate judge's] Order [to] warrant[] reconsideration," and remanding "for further explanation of his ruling").

## ARGUMENT

### A.   The Magistrate Judge Applied the Wrong Legal Standard in the March 4 Order

Central to the March 4 Order was the Magistrate Judge's holding that "[t]his court has a limited role in a proceeding to enforce an administrative subpoena: 'it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought

is reasonably relevant.'"  March 4 Order at 5-6; *see also id*. at 6 ("'the scope of issues which may be litigated in an enforcement proceeding must be narrow…").   But while that may be the standard for run-of-the-mill subpoena enforcement actions, it is the wrong standard here and renders the March 4 Order both contrary to law and clearly erroneous.

Where the recipient of a subpoena or similar document demand contends it is unable to comply without violating the laws of another nation, there are a number of complex issues that the court must consider and weigh before ordering compliance.  These issues go well beyond the "narrow scope of review" referenced in the March 4 Order.  *See id*. at 6.  Specifically, as *both parties* have explained in their papers, federal courts apply a multi-factor test drawn from the Restatement on Foreign Relations Law to consider whether to require compliance with a subpoena or other document demand in such circumstances.  *See* DTTC Opposition (Document 23) at 26 ("[f]ederal courts apply a multi-factor test to resolve a federal agency's demand that a subpoena recipient violate another nation's laws."); SEC Memorandum of Points and Authorities in Support of Application ("SEC Mem. App.") (Document 1-1) ("where subpoena recipients cite foreign laws as a defense to compliance with a subpoena, courts must consider the recipient's good faith, along with a series of factors drawn from the Restatement on Foreign Relations Law…."); SEC Reply Memorandum in Support of Application (Document 38), at 12-24 (arguing that application of multi-factor test calls for enforcement of the subpoena in these circumstances.)  These factors include: "(a) the competing interests of the nations whose laws are in conflict; (b) the extent and nature of hardship of compliance for the party or witness from whom discovery is sought; (c) the extent to which the required conduct is to take place in the territory of another state; (d) the nationality of the person; (e) the importance to the litigation of the information and documents requested; and (f) the ability to obtain the subpoenaed

10

information through alternative means." *See* SEC Mem. App. at 15; *see also United States v. First Nat'l Bank of Chi.*, 699 F.2d 341, 345 (7th Cir. 1983); *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992, 997 (10th Cir. 1977); *Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 116 F.R.D. 517, 522 (S.D.N.Y. 1987); Restatement (Third) of Foreign Relations Law § 442(1)(c) (1986)); Restatement (Second) of Foreign Relations Law of the United States § 40 (1965).

It is therefore both well-settled federal law and uncontested in this action that this multi-factor test is the applicable legal standard for determining whether to require DTTC to comply with the subpoena here. However, the March 4 Order never mentions that legal standard, or provides any indication that it was a "relevant factor" in its analysis.[4] *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 725 (D.C. Cir. 2012). Instead, it repeatedly references a "narrow scope of review" that plainly does not contemplate the more complex analysis that must be used in cases where foreign law prohibits compliance with a subpoena. This is a critical misapplication of law that requires reversal of the March 4 Order.

---

[4]    The March 4 Order also suggests erroneously that the D.C. Circuit's decision in *In re Sealed Case* pertains only to the propriety of imposing sanctions, and not whether to issue an order requiring compliance with a subpoena in the first place. March 4 Order at 8. Although a contempt order was the subject of the appeal in *In re Sealed Case*, the D.C. Circuit clearly explained that the "most important" factor in its decision to reverse the lower court was "the fact that these sanctions represent an attempt by an American Court to compel a foreign person to violate the laws of a different foreign sovereign on that sovereign's own territory." *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987) ("it causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question"). Here, the SEC is asking this Court to do the very thing about which the D.C. Circuit expressed such grave concern: order DTTC to violate Chinese law on Chinese soil. DTTC respectfully submits that there is no basis to conclude that this clear admonition from the D.C. Circuit is inapplicable simply because the court here is considering a "motion to require subpoena compliance" rather than a motion for contempt. Indeed, under these circumstances, *In re Sealed Case* precludes an order requiring compliance with the SEC's subpoena.

### B.   The Magistrate Judge's Termination of the Stay Was Based on the Application of the Wrong Legal Standard

The Magistrate Judge's decision to grant the SEC's motion to terminate the stay—and deny DTTC's motion to extend it—stems directly from the misapplication of the legal standard that governs subpoena enforcement actions in which the recipient would be required to violate foreign law.   Indeed, application of the wrong legal standard here rendered the Magistrate Judge's consideration of two central aspects of her stay ruling fatally flawed: (1) the nature and scope of overlap between this action and the Consolidated Omnibus Proceeding; and (2) the balance of interests between the parties.

In moving to extend the stay, DTTC explained that this action and the Consolidated Omnibus Proceeding involve the same basic facts: the SEC has requested audit workpapers from China-based audit firms, and the firms are unable to produce the documents without (1) violating China law and the express directive of their primary regulator, and (2) exposing the firms and their personnel to the risk of severe punishment in China, including potential criminal sanctions. DTTC Opposition to Lift Stay ("Opp.") (Document 42) at 13-14.   Each of the matters, therefore, must consider the enforceability of SEC requests for workpapers in the face of foreign law prohibitions on production.   *See id.* at 14-16.   It is of no moment whether such requests are framed as subpoenas or requests under Section 106 of Sarbanes-Oxley.   They present the same core facts, and the question of enforceability will be resolved using the same multi-factor test.[5] *See supra p. 10.*

---

[5]    The SEC concedes the multi-factor test must be applied in the instant action, but argues that it is irrelevant in the Consolidated Omnibus Proceeding because the SEC is purportedly not attempting to "enforce" the document requests at issue there.   SEC Opposition to DTTC Motion to Extend the Stay (Document 45), at 3, 17.   That position is meritless.   Before the Administrative Law Judge can determine if the China-based firms "willfully refused" to produce their workpapers under Section 106(e), the predicate issue of whether those requests are enforceable at all must first be addressed.   If the requests are not enforceable, the firms have no obligation to comply with them, and therefore could not "willfully

The March 4 Order held, however, that the issues presented in the two matters were "not likely to overlap to an extent which would render the parallel proceedings inefficient" or otherwise harm any interest DTTC might have in "avoiding 'parallel litigation of core issues' and avoiding the risk of 'inconsistent holdings on a matter of international importance.'"  March 4 Order at 11-12.  Those conclusions are based on the legal error that this Court's role in the instant action is limited to determining whether "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Id*. at 5-6. The March 4 Order never mentions that this Court must apply the multi-factor test to determine the enforceability of the subpoena at issue.  And it similarly never addresses whether the multi-factor test will be applied to determine the underlying enforceability of the ten requests at issue in the Consolidated Omnibus Proceeding.  As that test must be applied in the parallel proceedings involving the same core facts and a subset of the same parties, then there is undeniably substantial overlap between the instant case and the administrative proceeding. Allowing them both to proceed in an uncoordinated, parallel manner creates an unnecessary and unacceptable risk of inconsistent holdings on a matter of international sensitivity and importance. But because the March 4 Order applied the wrong legal standard, it never even "considere[d]

refuse" to do so.  And under well-settled law, the proper standard for determining the enforceability of such document requests is the multi-factor test derived from the Restatement.

As explained in its Opposition to the Motion to Lift the Stay, DTTC (along with the other firms) has moved to dismiss the Consolidated Omnibus Proceeding on the grounds that Section 106 requires the enforceability of the ten requests at issue there to be determined by a federal court.  Opp. at 12.  If that motion is granted, a court's consideration of their enforceability can be coordinated with this action using the same standard.  But even if the motion is denied, the underlying enforceability of those ten requests—based on application of the multi-factor test—remains a predicate question that must be addressed, even if by the Administrative Law Judge.

the[se] relevant factors," and its holding to terminate the stay (and not to extend it, as requested by DTTC) is therefore both contrary to law and clearly erroneous.[6]

**B.    Based on the Application of the Wrong Legal Standard, the Magistrate Judge Ordered an Immediate Hearing on the Merits Without Opportunity for Discovery or Evidentiary Hearing**

The Magistrate Judge's misapplication of the controlling legal standard in this subpoena enforcement action resulted in a lack of recognition of the "special circumstances" present that require limited discovery, supplemental declarations and briefing, and an opportunity to request an evidentiary hearing. Instead, the March 4 Order set an immediate hearing "on the merits," without providing DTTC with any of those opportunities (or sufficient notice to arrange for live witnesses), notwithstanding the SEC's newly filed brief and voluminous supporting declarations, all addressing circumstances subsequent to DTTC's prior submissions. The portion of the March 4 Order setting a summary hearing on extremely short notice is also contrary to law and clearly erroneous.

This action requires the resolution of complex and multi-faceted issues which present the type of "special circumstances" that *require* discovery in subpoena enforcement actions. *See SEC v. Lavin*, 111 F.3d 921, 926-27 (D.C. Cir. 1997) (holding that where "special circumstances

---

[6]        The March 4 Order's discussion of the "balance of interests" also indicated that "extending the stay would preclude [the SEC] from 'obtain[ing] documents that are critical to its ongoing Longtop investigation within any reasonable timeframe,' and that such a delay would 'harm[] both the SEC and investors.'" March 4 Order at 11. Upon review of the "entire evidence," it is clear that an expeditious resolution of this action and an order requiring DTTC to comply with the subpoena will *not* facilitate the SEC's obtaining the requested documents. DTTC has repeatedly stated that it *cannot* produce the documents without authorization from the authorities in China. *See, e.g.*, Trans. Mot. Hearing (Jan. 29, 2013) at 29-30, 31 (respectfully suggesting this action is "futile" and that "the practical reality … is that no reasonable person in China faced with a directive from its regulator not to produce documents in the United States is going to take the risk, including criminal sanctions, of doing so. So it's not like we can just press a button here and the documents are going to show up…"). And the SEC's decision to stay the case in order to pursue a negotiated resolution with the CSRC underscores this point all the more. Thus, to the extent the Magistrate based her ruling on the view that this Court's issuance of an order requiring compliance will facilitate the SEC's interest in obtaining the documents, it is clearly erroneous and must be reversed. *Arakelian*, 126 F.R.D. at 2 (D.D.C. 1989).

existed requiring discovery," the district court abused its discretion by treating the respondent's request for discovery "as part of a 'run-of-the-mill' subpoena enforcement proceeding"). "[S]ubpoena enforcement proceedings must be adversarial in character and . . . afford an adequate opportunity to raise all objections to [the] administrative subpoena." *FTC v. Atl. Richfield Co.*, 567 F.2d 96, 106 n.22 (D.C. Cir. 1977) (internal quotation marks omitted). "Depending on the circumstances of the case," the D.C. Circuit has recognized that "this adversary proceeding may take the form of an evidentiary hearing." *Id.* Indeed, where the party resisting compliance in an enforcement proceeding "raises proper affirmative defenses," an evidentiary hearing ordinarily "will be required." *United States v. McCarthy*, 514 F.2d 368, 373 (3d Cir. 1975) (concluding in proceeding to enforce administrative subpoena that "defendants must be afforded a hearing as well as an opportunity, at the appropriate time, to demonstrate that discovery is necessary to a proper resolution of one or more of the issues still to be determined").

Consistent with this authority, DTTC has contended throughout this action that appropriately tailored discovery is necessary given the substantial and complex questions that must be addressed under the multi-factor test, and that the parties should have the opportunity to request an evidentiary hearing. *See, e.g.*, DTTC Opposition to Application for Order to Show Cause, at 13 n.9 ("DTTC respectfully requests that no order granting the SEC's application or otherwise enforcing the Subpoena be entered unless and until DTTC has had the opportunity to conduct appropriate discovery."); *see also id.* at 38 n.22 ("DTTC seeks discovery regarding to what extent, if any, the SEC has sought the CSRC's cooperation or used Section 106(f), in this or any other matters. Such information would assist a fully informed application of the comity factors."); DTTC Notice of Filing Proposed Schedule (Document 18) (proposing that discovery occur prior to filing of DTTC's Opposition to the SEC's Application, and that the parties be

afforded the opportunity to request an evidentiary hearing).  As recently as the January 29, 2013

hearing before the Magistrate, DTTC re-affirmed its position that the SEC's Application is "not

ripe for decision … because limited discovery would be needed."  Mot. Hr'g Tr. (Jan. 29, 2013)

at 32.

DTTC has not been alone in this regard.  The SEC has also repeatedly recognized the

potential need for discovery in this matter.  *See* Reply at 13 n.4 (despite contending that the

declarations it filed "for the most part, moot" the need for discovery, "to the extent DTTC has

specific requests for further information; the SEC will make good-faith efforts to consider them

in advance of any hearing ordered by the Court on the present briefs."); SEC Notice of Filing

Proposed Briefing Schedule (Document 19), at 4 n.2 (contending that any discovery should take

place after DTTC filed its Opposition to the SEC's Application, and noting that "[d]epending on

how the Respondent responds to the Commission's Application, *the Commission may itself seek*

*discovery from the Respondent*") (emphasis added); *id.* at 1 (setting a proposed deadline for

parties to request an evidentiary hearing).

Indeed, the need for discovery and supplemental evidentiary submissions has been made

even more pressing by the SEC's filing—on December 3, 2012, when the case was stayed—of

"reply" papers accompanied by a number of new declarations and references to intervening

developments since the filing of DTTC's prior briefs.  The SEC filed these new materials

without warning while the case was still stayed, and nearly eight months after DTTC filed its

opposition to the SEC's Application.  The need for focused discovery and a potential evidentiary

hearing concerning the new factual assertions contained in the SEC's recently-filed papers is

clear.  For example:

- The SEC submitted the declaration of a law professor who appears to contend that
  DTTC's production of the requested workpapers would not violate China law.  This

16

late-breaking opinion appears inconsistent with the SEC's own admissions in this case[7] and the Consolidated Omnibus Proceeding, as well as the recent public statements of a PCAOB member.[8]   It also conflicts with the opinion offered by DTTC's own experts.   In such circumstances, targeted expert discovery and additional evidentiary submissions are necessary.[9]

- The SEC's reply and supporting declarations refer to correspondence exchanged between the CSRC and the SEC in their negotiations over workpaper access, *see* Arevalo Decl. ¶ 3 (correspondence between CSRC and SEC); *see also* Tafara Decl. ¶ 18 (numerous communications).   DTTC is entitled to see this correspondence, which could be highly relevant to the "competing interests" of China and the United States that are a factor under the multi-factor test.

- The declarations filed by the SEC indicate that the CSRC offered to produce the workpapers at issue here (as well as workpapers in another investigation) subject to certain conditions, but the SEC refused those offers.   *See* Arevalo Decl. ¶ 36-39, 61-63.   Discovery concerning the terms and conditions of those offers would be highly relevant to the availability of "alternative means of securing the information."

The scope of such discovery should be determined through consultation between the parties, and the approval of the Magistrate Judge.   But certainly there should be no hearing on the merits until appropriate discovery is taken, and DTTC has the opportunity to make supplemental submissions and to request a proper evidentiary hearing.

The March 4 Order, however, did not take into account—or even reference—any of the "special circumstances" that are present here and require discovery and an evidentiary hearing. This appears to have resulted from the Magistrate's misapplication of the applicable legal

---

[7]    The SEC does not contend—particularly in light of statements made by the CSRC since the filing of this action—that DTTC bears no risk in complying with the Subpoena.   But that fact only highlights that there is a conflict of laws here between DTTC's obligation to comply with U.S. laws and its obligation to comply with Chinese laws."   SEC's Reply Memorandum in Support of its Application for an Order Requiring Compliance With Subpoena (Document 38) at 3.

[8]    *See* Speech by PCAOB Member Lewis Ferguson, Investor Protection Through Audit Oversight (Sept. 21, 2012), *available at* http://pcaobus.org/News/Speech/Pages/09212012_FergusonCalState.aspx ("Under Chinese law, it is illegal to remove audit work papers from China.").

[9]    *See SEC v. Minas de Artemisa, S.A.*, 150 F.2d 215 (9th Cir. 1945) (explaining that the lower court had held an evidentiary hearing with live witnesses to consider the impact of Mexican law on a subpoena recipient's ability to produce documents); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2444, at 406 (1971) (When construing foreign law, the court "may consider any material the parties wish to present. . . . In addition to primary materials and expert testimony, a litigant may present any other information concerning foreign law that is believed to further his or her cause. . . .).

standard.   Indeed, the March 4 Order repeatedly emphasizes the "summary" nature of subpoena enforcement proceedings, and the "narrow scope of review."  *See, e.g.*, March 4 Order at 5, 6, 11.  But it fails to mention the important issues deriving from principles of international comity that must be resolved in determining the enforceability of the SEC's subpoena in these particular circumstances.   As such, ordering an expedited "motions hearing" without even addressing DTTC's requests for discovery and supplemental submissions is contrary to law and  clearly erroneous.[10]

## CONCLUSION

For the foregoing reasons, DTTC objects to the March 4 Order and requests that the District Judge institute a stay of the proceedings pending resolution of the Consolidated Omnibus Proceeding.

Dated:  March 11, 2013                    Respectfully submitted,


    /s/ Miles N. Ruthberg
_____

LATHAM & WATKINS LLP
Miles N. Ruthberg (255836)
Jamie L. Wine (502548)
885 Third Avenue
New York, New York  10022-4834
Tel: (212) 906-1200


    /s/ Michael D. Warden
_____

SIDLEY AUSTIN LLP
Michael D. Warden (419449)
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005

---

[10]      Earlier in this action, the Magistrate denied DTTC's request for discovery prior to the filing of its Opposition, but did not preclude potential discovery thereafter.  Scheduling Order 2 (Document No. 22) (denying leave to conduct discovery only "before [DTTC] files its opposition").   However, DTTC's renewed requests for discovery and an evidentiary hearing were not addressed in the March 4 Order.

Tel: (202) 736-8000

Gary F. Bendinger, *pro hac vice*
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300

*Counsel for Respondent Deloitte Touche Tohmatsu CPA Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2013, I served via electronic mail the above

Respondent's Memorandum in Reply to Petitioner's Opposition to Emergency Motion for

Continuance for March 13, 2013 Hearing on:

David Mendel
Securities and Exchange Commission
100 F Street, NE
Washington, DC  20549-2557
MendelD@sec.gov

s/Miles N. Ruthberg
Miles N. Ruthberg

20