# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, <br><br> Petitioner, <br><br> -v.- <br><br> DELOITTE TOUCHE TOHMATSU CPA LTD., <br><br> Respondent. | Miscellaneous Action <br> No. 11-0512 GK/DAR |

## DECLARATION OF JAMES EDWARD JAMISON

I, James Edward Jamison, hereby declare as follows:

1. I am over the age of 18 years, and I am the General Counsel to the Deloitte China businesses, which include Deloitte Touche Tohmatsu CPA Ltd. ("DTTC"). I have personal knowledge of the facts set forth in this declaration. I submit this declaration in opposition to the U.S. Securities and Exchange Commission's Application for Order Requiring Compliance with Subpoena (filed 13 December 2012) and to follow up on the oral proffer of DTTC's counsel at the 13 March 2013 hearing in this matter.

2. Specifically, I wish to clarify that at no time did I or any other officer of DTTC agree to accept service on behalf of DTTC of an U.S. Securities and Exchange Commission ("SEC") subpoena related to Longtop Financial Technologies Limited ("Longtop"), which is the subject of the present action, that was not issued pursuant to Section 106 of the Sarbanes-Oxley Act of 2002, as amended. Nor did I or any other officer of DTTC authorize anybody, specifically including Gibson Dunn & Crutcher LLP ("GDC"), to accept service on behalf of

DTTC of any SEC subpoena related to Longtop that was not issued pursuant to Section 106. I set out the relevant facts in more detail below.

**DTTC And My Role As General Counsel**

3.   I joined DTTC as General Counsel designate in March 2011 and became the General Counsel of DTTC on 1 June 2011. Prior to joining Deloitte China, I had been a partner in the dispute resolution practice at Clifford Chance LLP for 11 years, most recently in its Tokyo and Hong Kong offices. I earned my Law degree from the University of Cambridge in 1983. I was admitted as a solicitor in England and Wales in 1986, and in Hong Kong in 1998. I am presently based in Hong Kong.

4.   Until 31 December 2012, DTTC was the corporate entity through which Deloitte China operated its professional services practice providing audit, tax, consulting, and financial advisory services to clients in the mainland of the People's Republic of China. The practice's audit clients include clients who are registered with the SEC. On 1 January 2013, the practice of DTTC was moved to a new non-corporate entity, Deloitte Touche Tohmatsu Certified Public Accountants LLP, to comply with changes in the mainland's regulatory regime for the accountancy profession. Neither Deloitte China, DTTC, nor Deloitte Touche Tohmatsu Certified Public Accountants LLP has, or has ever had, offices or a presence in the United States. *See* Declaration of Charles Lip Sai-Wo (Document 23-3), at ¶¶ 15-20.

5.   As General Counsel of DTTC, I am the officer responsible for DTTC's legal matters, including the management of DTTC's involvement in the SEC investigation of Longtop that is the underlying subject matter of this proceeding.

**DTTC's Experience Of SEC Document Requests Prior To Longtop**

6.   A few months before I joined Deloitte China, Congress amended Section 106 of the Sarbanes-Oxley Act to expand the SEC's ability to seek documents from foreign accounting firms. This amendment required DTTC to appoint an agent in the United States to accept service of document requests made under that Section.

7.   On 7 March 2011, DTTC appointed Deloitte & Touche LLP ("Deloitte US") in New York to be its agent for service of document requests from the SEC pursuant to Section 106 of the Sarbanes Oxley Act of 2002, as amended. Attached as Exhibit A is DTTC's Consent and Power of Attorney reflecting that appointment. As a result, I understood that the SEC was relieved of any requirement to serve Section 106 document requests directly on DTTC in China and that such requests could be served on Deloitte US in New York.

8.   Consistent with DTTC's designation of Deloitte US for service of Section 106 document requests, on 11 March 2011, the SEC Division of Enforcement (the "Division") served a Section 106 request on Deloitte US in New York "as designated agent" for DTTC, requesting the production of documents relating to a China-based audit client ("Client A") – *not* Longtop – whose securities were registered with the SEC.[1] That request is attached to this declaration (in redacted form so as not to reveal the name of the client) as Exhibit B. As set forth in Exhibit B, the SEC issued this request "pursuant to section 106 of the Sarbanes-Oxley Act of 2002," as amended by the Dodd-Frank Act.[2] Deloitte US forwarded that document request to DTTC in

---

[1] The Client A request is the basis for the SEC's administrative proceeding against DTTC filed in May of last year, and now consolidated as part of the omnibus Rule 102(e) proceeding before the SEC. *See In the Matter of BDO China Dahua CPA Co. Ltd., et al.*, Order Instituting Proceedings Pursuant to Rule 102(e)(1)(iii) (Dec. 3, 2012) (File Nos. 3-14872, 3-15116).

[2] As of that time, the Division did not say (as it now does) that a Section 106 request could not be carried out through a subpoena and that the two therefore could not be confused. To the

3

China. DTTC had already retained GDC to represent it in the Client A investigation, and that firm assisted DTTC in responding to the request.

9. Because of the Client A matter, I already knew that under Section 106 of the Sarbanes-Oxley Act the SEC had the power to seek documents from foreign accounting firms pursuant to the procedures under that section. I knew that a document request under that section could be served on DTTC by service on Deloitte US. I was also alive to the possibility that such a request could put DTTC in a difficult position because of the constraints of Chinese law, although I derived comfort from the fact that Section 106 expressly contemplates that a foreign accounting firm may satisfy a document request by production to its local regulator rather than to the SEC.

**The Longtop Case**

10. It was against this backdrop, that the Longtop matter began to unfold just a couple of months later.

11. By letter dated 22 May 2011 (a Sunday), DTTC resigned as Longtop's external auditor. I had already retained GDC to advise DTTC in connection with Longtop, and I understood that as a courtesy GDC would call the Staff of the SEC (with whom they were already in contact on the Client A matter) first thing on the Monday morning (23 May 2011) to inform the Staff of DTTC's resignation. I envisaged that this would be a friendly courtesy call

---

contrary, the SEC accompanied the Section 106 request regarding Client A with its Form 1662, titled "Supplemental Information for Persons Requested to Supply Information Voluntarily or *Directed to Supply Information Pursuant to a Commission Subpoena*." (emphasis added). Indeed, I understand that the SEC attached its Form 1662 to all ten of the Section 106 requests at issue in the parallel consolidated administrative proceeding, including an additional request issued to DTTC relating to another audit client ("Client G").

4

regarding DTTC's resignation; we were not even aware at that stage whether the SEC had begun an investigation into Longtop.

12. On May 24, 2011, following that call and a subsequent call later on Monday 23 May 2011 between GDC and the SEC Staff, I learned for the first time that the Staff intended to issue a document request seeking Longtop documents from DTTC. As noted above, I understood that the Division had the ability to issue Section 106 document requests in connection with SEC investigations regarding China-based companies, and that the Staff could serve such requests on DTTC by serving Deloitte US – DTTC's designated agent for service of process for Section 106 requests – in New York. I also understood that if the SEC chose to go forward with a Section 106 document request it easily could be served via Deloitte US. In those circumstances, I was not concerned about the prospect of agreeing that the SEC could serve a Section 106 request on GDC as an accommodation to the Division, rather than insisting on it being served via Deloitte US. That concession would have extended the SEC a professional courtesy but would have had no substantive jurisdictional effect.

13. I emphasize, however, this outlook did not extend to subpoenas or requests served *other* than as Section 106 requests. Given the difficult position into which such other requests could put DTTC with its national regulators, and because of the constraints of Chinese law, I would not have entertained the idea of waiving substantial service or jurisdictional arguments. I did not authorize, and would not have authorized GDC, or anybody else, to accept service on behalf of DTTC of any subpoena or request regarding Longtop not issued as a Section 106 request.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on 19th March 2013 at Hong Kong.