**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Petitioner, ) | Miscellaneous Action |
| ) | No. 11-0512 GK/DAR |
| -v.- ) ) | |
| DELOITTE TOUCHE TOHMATSU CPA LLP, ) ) ) | |
| Respondent. ) ) | |

## RESPONDENT'S MEMORANDUM IN REPLY TO PETITIONER'S OPPOSITION AND RESPONSE ADDRESSING POST-HEARING DECLARATION

This case demonstrates why no statute or court has ever permitted the Securities and Exchange Commission ("SEC") to serve a subpoena on a foreign company, for documents located abroad, by delivering it to the company's outside counsel in the United States. The circumstances surrounding service of the subpoena in this case were discussed at length during the March 13, 2013 hearing in this matter. On March 20, 2013, Deloitte Touche Tohmatsu CPA LLP ("DTTC") submitted a five-page declaration of its General Counsel (the "Declaration") to address an issue about which this Court inquired during the hearing. The Declaration merely confirmed that—notwithstanding the SEC's continued contentions to the contrary—DTTC never authorized its former outside U.S. counsel to accept service of an SEC subpoena or document request that was not issued under Section 106 of Sarbanes-Oxley, or otherwise "entertained the idea of waiving substantial service or jurisdictional arguments." Declaration ¶ 13.

In its Opposition and Response (Document 56), the SEC attacks the Declaration as "revisionist and extremely belated," but in doing so: (1) contradicts the clear record in this case; (2) fails to demonstrate that it had the authority to serve DTTC's former U.S. counsel with the

subpoena in these circumstances; and (3) ignores altogether that, in any event, DTTC did not waive its objection to the SEC's attempt to exceed the territorial scope of its statutory subpoena authority. DTTC's consistent position throughout this process has been that the only way for the SEC to seek workpapers located in China from foreign public accounting firms is through Section 106, not through a subpoena under the Securities Act of 1933 or the Securities Exchange Act of 1934. The SEC, however, has now expressly disclaimed any reliance on Section 106 here. Accordingly, the SEC lacks the statutory authority to seek the requested documents and did not properly affect service of its subpoena. For these reasons, the SEC's Application for an Order Requiring Compliance with a Subpoena (Document 1) ("Application") should be denied, without even reaching the enforceability of the subpoena under the comity analysis.

      A.    **DTTC Has Consistently Taken the Position That Service Was Not Authorized for a Subpoena Not Issued Under Section 106.**

The SEC is flat wrong that the Declaration constitutes "the first time the authority of DTTC's United States counsel to accept the Commission's subpoena" has been raised. *See* Opposition and Response at 1. In fact, beginning shortly after the purported service of the subpoena, DTTC has raised the consistent position that its former U.S. outside counsel was not authorized to accept service of a subpoena or document request that was *not* issued pursuant to Section 106. The SEC argues that the question of proper service is wholly resolved by the fact that the request here was styled as a "subpoena" and correspondence between the Staff and DTTC's counsel used the term "subpoena" to reference it. *See, e.g.*, *id*. at 2-4. But this misses the point: at the time DTTC received the subpoena, the SEC itself had not articulated its current position that a "subpoena" necessarily could not be issued under Section 106. To the contrary, the SEC had used subpoena terminology in the very context of Section 106 requests. *See* Declaration ¶ 8 & n.3.

2

Further, it was entirely understandable for DTTC to construe a subpoena seeking documents from abroad as being pursuant to Section 106. Section 106 was specifically passed to govern the SEC's efforts to seek documents located abroad from foreign public accounting firms. 15 U.S.C. § 7216. And less than one year prior to the delivery of the instant subpoena to DTTC's counsel, Section 106 was amended by Dodd Frank to, *inter alia*, facilitate the Staff's ability to serve document requests under Section 106 on foreign public accounting firms. Pub. L. No. 111-203, § 929J (2010). In this context, the natural understanding on DTTC's part was that the SEC would use (and could use only) this Section 106 authority where it is seeking documents located abroad from foreign public accounting firms—as opposed to its traditional investigative subpoena authority under the 1933 and 1934 Acts that was not designed for these circumstances and that was subject to significant territorial restrictions. Against this backdrop, the subpoena itself did not clarify matters, but instead was entirely silent on whether its statutory basis was the 1933 and/or 1934 Acts, as opposed to Section 106.[1]

Far from "revisionist and extremely belated," this position was articulated by DTTC's outside counsel in its lengthy response on July 8, 2011 to the SEC's subpoena. *See* Exhibit 17 to Declaration of Michael Warden (Document 23-11) ("Letter"). The SEC's Opposition and Response omits this letter from its recitation of "background facts" and then mischaracterizes it in a footnote in the back of its brief. *See* Opposition and Response at 12 n.1. In the July 8, 2011 letter, DTTC's outside counsel (Sidley Austin LLP) unequivocally set forth DTTC's understanding that the subpoena had been issued and served under Section 106:

---

[1] Although the SEC now says that the distinction between Section 106 requests and subpoenas is clear, the SEC's March 11, 2011 request that was cited in the Declaration was explicitly labeled a "*Section 106*" request, and yet the SEC enclosed its Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or *Directed to Supply Information Pursuant to a Commission Subpoena*." Declaration ¶ 8 & n.3 (also explaining that the SEC attached its Form 1662 to all ten of the Section 106 requests at issue in the parallel administrative proceeding).

- "DTTC is complying consistent with the procedures recently adopted by Congress as amendments to Section 106." Letter at 2.

- "DTTC objects to the Subpoena to the extent it calls for materials that are outside the scope of Section 106." *Id*.

- "Congress itself recognized this exact manner of impediment—and provided Section 106 as a proper mechanism for production consistent with both U.S. and foreign law. Accordingly, DTTC is complying with the Subpoena through Section 106. . . ." *Id*.

- "Because DTTC is a foreign public accounting firm, any production by it to the SEC is governed by Section 106 of Sarbanes-Oxley. . . ." *Id*. at 3.

- Because DTTC is a foreign public accounting firm, and therefore, any production it makes to the SEC should be pursuant to Section 106, DTTC stands ready to comply fully with the Subpoena through the mechanism contemplated by Section 106." *Id*.

DTTC thus clearly and contemporaneously communicated to the Staff its understanding that the subpoena was issued under Section 106. The Staff did not respond to this letter or otherwise rebut counsel's position about the statutory basis of the subpoena.

In fact, it was not until two months later in September 2011 (and on the eve of the SEC's initial filing in this Court) that the SEC first articulated its current view that the subpoena had not been issued pursuant to Section 106. Two days before filing its September 8, 2011 Application for an Order Requiring Compliance with a Subpoena—and in an apparent attempt to bolster its litigation position in this Court—the SEC served a request for DTTC's Longtop workpapers on DTTC's Section 106 agent. The request explicitly identified Section 106 as its statutory basis and asserted that "DTTC has distinct and separate obligations to produce documents pursuant to the May 27, 2011 subpoena." *See* Exhibit 1, Division of Enforcement Request to DTTC (Sept. 6, 2011). Service of this document provided the foundation for the SEC to argue in support of its Application that Section 21(b) of the 1934 Act and Section 19(c) of the 1933 Act were the basis of the subpoena, and for the first time to disclaim expressly any reliance on Section 106 as the basis for the subpoena. *See* Document No. 1-1 at 8, 11-13; Document No. 1-2 at 9 n.3. Notably,

4

the Application specifically acknowledged DTTC's position that "the Subpoena's scope is necessarily constrained by Section 106" and that "Section 106 provides the sole means by which the Commission can request or obtain [DTTC's] workpapers." Document No. 1-1 at 12.

DTTC then reiterated its position in its Opposition to the Application, filed on April 11, 2012. DTTC made clear there that its former U.S. outside counsel accepted service of the Subpoena only "as an accommodation to the SEC and because the SEC was authorized to serve a Section 106 document request on DTTC's appointed Section 106 agent…" and that "DTTC objected to the Subpoena … to the extent it claimed broader authority over DTTC than DTTC's limited Section 106 consent provides." DTTC's Statement of Points and Authorities Opposing the SEC's Application for Order to Show Cause and Order Requiring Compliance with a Subpoena (Document 23), at 11, 19 & n.12. DTTC reprised this same point again in its Opposition to the SEC's Motion to Lift the Stay—DTTC's very next substantive brief filed following the more than six months of stays requested by the SEC.[2] Most recently, at the March 13, 2013 hearing, DTTC's current counsel similarly affirmed that DTTC's former counsel was "[a]uthorized and willing to accept service *on the understanding that it was a Section 106 subpoena . . . . ,*" and that "[t]here was authority, *but not to accept a subpoena that was not under Section 106. . . .*"[3] Motion Hr'g Tr. at 79:2 – 79:4, Mar. 13, 2013 (emphasis added).

---

[2] *See* Opposition to Motion to Lift the Stay (Document 42), at 5 ("DTTC's then-U.S. counsel did not have control over the documents requested by the subpoena, and he accepted service of the subpoena only as an accommodation to the SEC and because, by statute, the SEC was authorized to serve a document request pursuant to 15 U.S.C. § 7216 ("Section 106")—as opposed to an administrative subpoena under 15 U.S.C. §§ 77s(c) and 78u(b))—on DTTC's appointed Section 106 agent."); *id*. at 21 ("Here, DTTC's former counsel lacked any such control over the documents, and was not even authorized to accept service of an *administrative subpoena* (as opposed to a Section 106 request, which, by statute, can be served in the U.S.) on DTTC's behalf.").

[3] Oddly, the SEC quotes this exact language for the proposition that "DTTC's current counsel, during the March 13, 2013 merits hearing, similarly conceded that Mr. Cox was authorized to accept

Thus, consistent with the Declaration, the record throughout the Longtop investigation and this court proceeding makes clear that DTTC has communicated from the outset that its former counsel was authorized to accept service only of a subpoena issued pursuant to Section 106. *See also Miller v. Holzmann*, 471 F. Supp. 2d 119, 121 (D.D.C. 2007) ("It is a fundamental principle of agency law that in order to impose liability on the principal for the acts of an agent, one looks at what the principal did, not at what the agent did."). It is now equally clear that the SEC, beginning with its Application and continuing to the present, has disclaimed any reliance on Section 106, instead choosing to proceed solely under its alleged authority under the administrative subpoena provisions of the 1933 and 1934 Acts. Accordingly, service was not effective.

**B.     In Any Event, the SEC Has No Authority for Serving Counsel in the Circumstances of This Case.**

In any event, under the SEC's own rules, the Division lacked authority to serve the subpoena by delivering it to DTTC's former U.S. counsel. The SEC claims in its Opposition and Response—as it did following an extended break during the March 13, 2013 hearing—that it served the subpoena pursuant to the Commission's Rules of Practice (and not Federal Rule of Civil Procedure 45, which does not authorize service on counsel here). Opposition and Response at 6-7. But Rule 150(b)-(d) on its face only provides for service on counsel when counsel has "filed notice of appearance pursuant to Rule 102," and that did not happen here.[4] 17 C.F.R. § 201.150(b). Thus, by its own terms, the rule is inapplicable.

---

service." Opposition and Response at 8. But the language—on its face—makes clear that such authority did not extend to a subpoena that was not issued under Section 106.

[4]     Rule 102 addresses appearances by counsel in a "proceeding," 17 C.F.R. § 201.102, which Rule 101 defines as "any *agency* process initiated by an *order instituting proceedings*" or various forms of petitions for Commission review. *Id.* § 201.101(a)(9) (emphasis added). An "order instituting proceedings" itself is defined by the SEC's rules as "an order *issued by the Commission* commencing a

Further, the SEC now contends that service was proper under theories of apparent authority, estoppel, and ratification. Again, nothing in the Commission's rules authorize service on such grounds. In any event, each of those alternative theories is predicated on the SEC's position that DTTC somehow "failed for almost two years to mention . . . Mr. Cox's alleged lack of authority" to accept service of a subpoena under the 1933 or 1934 Act. Opposition and Response at 13. But, as demonstrated *supra*, DTTC consistently made clear—starting in *July 2011*—that it was "complying with the Subpoena through Section 106" and objected to the subpoena "to the extent it calls for documents beyond what is authorized under Section 106." Letter at 2, 4. Under such circumstances, the SEC cannot contend that it "reasonably believe[d]" or made the "reasonable assumption" that DTTC had agreed to accept service of a subpoena that was not specifically subject to Section 106. *See* Opposition and Response at 7.

As also discussed at the March 13, 2013 hearing, in *Federal Trade Commission v. Compagnie de Saint-Gobain-Pont-a-Mousson*, the D.C Circuit demonstrated the rigor that must be applied when assessing the propriety and effectiveness of service of compulsory process on foreign parties. 636 F.2d 1300, 1304 (D.C. Cir. 1980) ("We cannot, however, simply assume . . . that Congress intended to authorize regulatory agencies . . . to employ any and all methods to serve compulsory process when conducting their investigations."). For precisely this reason, the D.C. Circuit found that "[i]n view of the international interests at stake," an agency "attempting subpoena service on foreign citizens residing on foreign soil should make initial resort through established diplomatic channels or procedures authorized by international convention," such as the Hague Convention. *Id*. at 1323. In the instant action, this guidance certainly does not

---

proceeding or an order issued by the Commission to hold a hearing," not an action in court such as this one. *Id*. § 201.101(a)(7) (emphasis added).

support the propriety of service on counsel in what is (at minimum) a highly ambiguous, contested, and internationally sensitive context.[5]

### C. Even if Service Were Deemed Effective, the Requested Documents Fall Beyond the Territorial Limits of the SEC's Statutory Subpoena Power.

Even if service on DTTC's then-U.S. outside counsel were deemed effective (which it was not), the SEC lacks the statutory authority under the 1933 or 1934 Act to compel the production of documents that are located abroad from a foreign firm that is also located abroad.

The U.S. Supreme Court's 2010 decision in *Morrison v. National Australia Bank Ltd.*, held—in the specific context of the federal securities laws—that there is a strong "presumption against extraterritoriality" and "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." 130 S. Ct. 2869, 2878, 2881 (2010). Here, the SEC purports to have issued the subpoena pursuant to Section 21(b) of the 1934 Act and Section 19(c) of the 1933 Act. But notwithstanding the clear requirement of *Morrison*, neither of those statutes expressly authorizes the SEC to seek documents located abroad from foreign firms. To the contrary, the statutes only authorize the SEC to require the production of documents "*from any place in the United States*. . . ." 15 U.S.C. §§ 77s(c), 78u(b) (emphasis added). Indeed, Congress adopted Section 106 and amended it in Dodd-Frank precisely to provide the SEC with the authority to seek documents abroad from foreign firms (but only under the specific procedures set forth in Section 106), and because the SEC's then-existing statutory authority (including under the 1933

---

[5] Notably, while the instant case involves service of compulsory process, all of the cases cited by the SEC to support its arguments about service by apparent authority, estoppel or ratification involve service of notice only, and none involve service on foreign parties. *See Clipper v. Frank*, 704 F. Supp. 285, 287 (D.D.C. 1989) (service of complaint, rather than subpoena, on domestic party); *Wilen I.Y.M., L.C. v. Colter & Peterson, Inc.*, No. 98-Civ-2633, 1998 WL 1093900 at *2 (D.N.J. Sept. 23, 1998) (same); *SEI Corp. v. Norton & Co.*, 631 F. Supp. 497, 502-03 (E.D. Pa. 1986) (same). These cases are therefore inapposite, as *Saint-Gobain-Pont-a-Mousson* instructs that the "distinction between service of notice and service of compulsory process is a crucial one under principles of both domestic and international law." 636 F.2d at 1311.

and 1934 Acts) was inadequate. Thus, under *Morrison*, the administrative subpoena provisions of the 1933 and 1934 Acts cannot be given extraterritorial application.

In arguing to the contrary, the SEC ignores *Morrison* altogether and instead points to out-of-Circuit cases that have now been effectively overruled by the Supreme Court. *See Fed. Mar. Comm'n v. DeSmedt*, 366 F.2d 464, 466 (2d Cir. 1966); *SEC v. Minas de Artemisa, S.A.*, 150 F.2d 215, 217 (9th Cir. 1945). Accordingly, this Court "owe[s] them no deference." *Morrison*, 130 S. Ct. at 2887-88. In any event, courts in the D.C. Circuit have held—even before *Morrison*—that the plain language of the SEC's statutory subpoena authority (and substantially identical language of other agencies' authority) does not authorize the SEC to compel testimony or documents from foreign citizens located abroad. *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984) (construing substantially identical subpoena authority, and holding that it does not permit CFTC to compel witness testimony from abroad); *SEC v. Zanganeh*, 470 F. Supp. 1307 (D.D.C. 1978) (holding the SEC not authorized to serve an investigative subpoena on a foreign national located outside the United States by sending the subpoena to an Oklahoma corporation that he owned.).

Even the now-repudiated cases cited by the SEC did not go as far as the Division seeks to go here. The SEC seeks an unprecedented holding that service on outside counsel in the United States creates extraterritorial reach to compel a foreign client to produce documents located abroad. The cases cited by the SEC all involved service in the United States on *officers or employees* of a foreign company.[6] By contrast, the instant case involves service on U.S. outside

---

[6] *DeSmedt,* 366 F.2d 464 (involving personal service on authorized company employees in the United States); *Minas de Artemisa*, 150 F.2d at 217 (involved personal service on the head of a Mexican company in Arizona.); *see also Saint-Gobain-Pont-a-Mousson*, 636 F.2d at 1324 (finding that service of administrative subpoena outside the United States was not effective service, but stating that by "obtain[ing] personal service upon the president, an officer, or a director of SGPM within the territorial

counsel who indisputably lacks possession, custody or control of the documents. To hold that serving outside counsel creates extraterritorial reach would be utterly without precedent, contrary to the intent of Congress in enacting Section 106 and its carefully crafted provisions for seeking documents located abroad, and would punish foreign companies for hiring U.S. counsel to defend their rights.[7]

In sum, in addition to the lack of effective service, recent and controlling Supreme Court precedent makes clear that the SEC has exceeded its statutory subpoena authority here, and the Application must be denied.

Dated:  April 4, 2013                              Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　　 /s/ Miles N. Ruthberg

LATHAM & WATKINS LLP
Miles N. Ruthberg (255836)
Jamie L. Wine (502548)
885 Third Avenue
New York, New York  10022-4834
Tel: (212) 906-1200


　　　　　　　　　　　　　　　　　　　　　　 /s/ Michael D. Warden

SIDLEY AUSTIN LLP
Michael D. Warden (419449)
Sidley Austin LLP
1501 K Street, N.W.

---

boundaries of the United States, it could validly obtain a judicial enforcement order for that subpoena"); *SEC v. Knowles*, 87 F.3d 413 (10th Cir. 1996) (deeming sufficient the SEC's personal service in the United States upon the "president" of the Bahamian companies at issue); *SEC v. Lines Overseas Mgmt., Ltd.*, No. 04-302, 2007 WL 581909, at *2 (D.D.C. Feb. 21, 2007) (approving personal service in the United States upon an "officer and managing director" of the foreign company); *see* Motion Hr'g Tr. at 79:2 – 79:4, Mar. 13, 2013 (SEC attempting to analogize service on "U.S. counsel" to personal service in the United States on a "partner" or a "CEO or an official" of a foreign company).

[7]     Nor is there any basis to conclude that service of the subpoena on DTTC's U.S. outside counsel waived its objection to the alleged extraterritorial reach of the SEC's subpoena. The Division does not—and cannot—point to any language or circumstance here that would constitute such a waiver.

        Washington, D.C. 20005
        Tel: (202) 736-8000

        Gary F. Bendinger, *pro hac vice*
        Sidley Austin LLP
        787 Seventh Avenue
        New York, New York 10019
        Tel: (212) 839-5300

        *Counsel for Respondent Deloitte Touche Tohmatsu CPA LLP*

## **CERTIFICATE OF SERVICE**

I certify that on April 4, 2013, I caused to be served, via email, a copy of the foregoing Memorandum in Reply to Petitioner's Opposition and Response Addressing Post-Hearing Declaration on the following:

>David S. Mendel, Esq.
>Assistant Chief Litigation Counsel
>U.S. Securities and Exchange Commission
>Division of Enforcement
>100 F Street, N.E.
>Washington, DC 20549
>(202) 551-4418 (phone)
>(202) 772-9362 (fax)
>mendeld@sec.gov

Dated: April 4, 2013

    /s/ Miles N. Ruthberg

LATHAM & WATKINS LLP
Miles N. Ruthberg (255836)
885 Third Avenue
New York, New York 10022-4834
Tel: (212) 906-1200

*Counsel for Deloitte Touche Tohmatsu CPA LLP*