**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| | ) |
| Petitioner, | ) Miscellaneous Action |
| | ) No. 11-0512 GK/DAR |
| -v.- | ) |
| | ) |
| DELOITTE TOUCHE TOHMATSU CPA LLP, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

**RESPONDENT'S REPLY MEMORANDUM IN SUPPORT OF OBJECTIONS TO
MAGISTRATE JUDGE'S MARCH 4, 2013 ORDER**

Miles N. Ruthberg (255836)
Jamie L. Wine (502548)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York  10022-4834
Tel: (212) 906-1200

Michael D. Warden (419449)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000

Gary F. Bendinger, *pro hac vice*
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300

Date:  April 8, 2013

Attorneys for Respondent
Deloitte Touche Tohmatsu CPA LLP

## PRELIMINARY STATEMENT

The need for a stay of this action is clear.  The instant action is a pawn in a broader conflict between the Securities and Exchange Commission ("SEC") and the China Securities Regulatory Commission ("CSRC") impacting the entire accounting profession in China.  At present, no audit firm in China can produce its workpapers directly to the SEC without violating China law and a specific directive from the CSRC, and thus risking severe consequences including potential criminal sanctions and dissolution of the firm.  The SEC itself has recognized that this conflict cannot be resolved without a sovereign-to-sovereign solution—the SEC has requested extended stays in this action to negotiate with the CSRC, and has now initiated a profession-wide administrative proceeding involving the five-major China-based audit firms (including Deloitte Touche Tohmatsu CPA LLP ("DTTC")).  Extending the stay in this matter for a relatively short time will promote judicial efficiency and fairness, allow the United States to speak with one voice in the SEC's dispute with the CSRC, and promote the best opportunity for a global, profession-wide resolution of this issue.

The Magistrate Judge nonetheless declined to extend the stay in this matter—and instead ordered an immediate hearing on the merits on March 13, 2013.  *See* Mem. Op. & Order, Mar. 4, 2013 (Doc. No. 49) ("March 4 Order").  This decision was premised on a narrow view of the legal standard applicable in this subpoena enforcement proceeding.  *See, e.g.*, *id*. at 6 ("[T]he scope of issues which may be litigated in an enforcement proceeding must be narrow.").  Such a narrow standard would be applicable if this were an ordinary subpoena enforcement proceeding, but it is not the applicable standard where, as here, a subpoena recipient is asked to violate foreign law on foreign soil.  *In re Sealed Case*, 825 F. 2d 494, 498 (D.C. Cir. 1987) ("[I]t causes us considerable discomfort to think that a court of law should order a violation of law,

1

particularly on the territory of the sovereign whose law is in question"). Courts confronting subpoenas that seek documents in contravention of foreign law must undertake a searching inquiry guided by a multi-factor test derived from the Restatement of Law of Foreign Relations and principles of international comity. *See, e.g.*, *United States v. First Nat'l Bank of Chi.*, 699 F.2d 341, 345 (7th Cir. 1983); *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992, 997 (10th Cir. 1977); *Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 116 F.R.D. 517, 522 (S.D.N.Y. 1987); Restatement (Third) of Foreign Relations Law § 442(1)(c) (1986)); Restatement (Second) of Foreign Relations Law of the United States § 40 (1965). Further, these factors must be applied in a manner consistent with the D.C. Circuit's strong reluctance to order a violation of foreign law on foreign soil. *In re Sealed Case*, 825 F. 2d at 498. So applied, the correct legal standard demonstrates that this action and the parallel administrative proceeding share core legal and factual questions. Uncoordinated parallel proceedings would risk inconsistent holdings on a matter of international significance and sensitivity, and impose obvious inefficiency and unique hardships on DTTC. The March 4 Order is thus contrary to law and must be set aside.

## ARGUMENT

### A.     The March 4 Order Did Not Apply the Correct Legal Standard to This Case.

The SEC's Opposition notwithstanding, there can be no real dispute in this case about the operative underlying legal standard, or that the March 4 Order did not apply it. This is decidedly not a garden variety enforcement action calling only for narrow judicial review. *See, e.g.*, March 4 Order at 6 ("[T]he scope of issues which may be litigated in an enforcement proceeding must be narrow."). Rather, where, as here, the recipient of a subpoena or document request cannot comply without violating the laws of its home country, established precedent (previously recognized and conceded by the Division itself) requires the court to apply a

2

complex, multi-factor test drawn from the Restatement of Law of Foreign Relations.  *See* SEC Mem. of P. & A. in Supp. of Application, Sept. 8, 2011 (Doc. No. 1-1), at 15 ("[W]here subpoena recipients cite foreign laws as a defense to compliance with a subpoena, courts must consider the recipient's good faith, along with a series of factors drawn from the Restatement on Foreign Relations Law."); DTTC Statement of P. & A. Opposing the SEC's Application for Order to Show Cause & Order Requiring Compliance with a Subpoena, Apr. 11, 2012 (Doc. No. 23), 26 ("[F]ederal courts apply a multi-factor test to resolve a federal agency's demand that a subpoena recipient violate another nation's laws.").  In this Circuit, courts applying this test must also follow the D.C. Circuit's strong guidance in *In re Sealed Case*, 825 F. 2d at 498 (identifying as the "most important" factor in its decision to reverse the lower court's contempt order "the fact that these sanctions represent an attempt by an American court to compel a foreign person to violate the laws of a different foreign sovereign on that sovereign's own territory").  The March 4 Order does not mention or analyze these factors or their significance to the overlap between the instant action and the parallel administrative proceeding.  To the contrary, the March 4 Order expressly notes that its conclusion regarding "the scope of review" caused it to reject DTTC's characterization of the overlap of issues with the Consolidated Omnibus Proceeding.  March 4 Order at 5 ("[T]he undersigned finds that Respondent's broad characterization [of the overlap of issues] does not accurately reflect the narrow scope of review before this court.")

The SEC's nominal defense of the legal standard articulated in the March 4 Order is contradicted by its own briefs and its statements at the subsequent March 13, 2013 hearing.  In its filings throughout the course of these proceedings, the SEC has consistently identified the multi-factor test as the governing framework.  *See, e.g.*, SEC Reply Mem. in Supp. of Application, Dec. 3, 2012  (Doc. No. 38), at 12-24 (asserting that the multi-factor test weighs in

favor of enforcement in this case).   At the March 13 hearing, counsel for the SEC again acknowledged unequivocally and repeatedly—no fewer than eleven (11) times—"the balance of factors" that courts in subpoena enforcement proceedings "routinely consider" where potential conflicts of international law arise (Hr'g Tr. 73:17-22, Mar. 13, 2013), and that this Court therefore "should" (*id.* at 30:23-25) and "needs to" (*id.* at 9:8-10) weigh in resolving the merits of this action.[1]   For the SEC now to maintain—in direct contradiction—that the March 4 Order appropriately described the court's role here is wholly without support.   The March 4 Order did not apply the correct legal standard and must be set aside.

> **B.   By Applying an Incorrect Legal Standard, the March 4 Order Significantly Underestimated the Overlap Between This Action and the Parallel Administrative Proceeding.**

As explained in DTTC's objections, by applying the incorrect legal standard, the March 4 Order significantly underestimated the degree of overlap between the instant action and the parallel administrative proceeding.   *See* March 4 Order at 5 (quoted above).   The SEC nonetheless contends that, whatever the applicable standard in the instant case, the "foreign law factors … are *irrelevant* to the ALJ's analysis" of the underlying enforceability of the ten document requests at issue in the parallel administrative proceeding.   SEC Mem. of P. & A. in Opp'n to Objections to Magistrate Judge's Mar. 4, 2013 Order, Mar. 28, 2013 (Doc. No. 55) ("Opp'n to Objections"), at 17 (emphasis added).   That is simply wrong: as explained in DTTC's Objections, the SEC cannot sanction the China-based audit firms in the administrative

---

[1]      *See, e.g.*, Tr. at 9:8-10 (asserting that "the factors that needs [sic] to be considered by the Court tip decisively and weigh in favor of enforcing the subpoena"); *id.* at 12:13-14 ("the balance of factors weighs decisively in favor of enforcing the subpoena"); *id.* at 27:17-21 ("[T]he SEC believes that the factors, including the balance of the interests of the countries, and efforts maintained by the SEC and – as well as conduct of the Respondent would justify an order."); *id.* at 30:23-25 (addressing "the balance of factors that [the Court] should consider"); *id.* at 73:17-22 (arguing that "even if there are restrictions under Chinese law, the factors, the balance of factors that Courts routinely consider . . . weigh[] in favor of a prompt order requiring compliance with the subpoena").

proceeding until first establishing that the requests at issue there are enforceable.  *See* DTTC Objections to Magistrate Judge's Mar. 4, 2013 Order, Mar. 11, 2013 (Doc. No. 53) ("DTTC Objections"), at 12 n.5.

In particular, determining the enforceability of the Section 106 requests is an obvious predicate to any sanction in the parallel administrative proceeding because a firm cannot be found to "willfully refuse" to respond to a Section 106 request that is not enforceable.  The SEC's argument that it may sanction a firm without determining whether the request itself is enforceable defies common sense.  Under well-settled law, the proper standard for determining the enforceability of such document requests—just like the subpoena here—is the multi-factor test derived from the Restatement.  *See supra*; *see also In the Matter of BDO China Dahua CPA Co., Ltd., et al.*, A.F. 3-15116, Div. of Enforcement's Mem. of Law in Opp'n to Deloitte Touche Tohmatsu CPA Ltd.'s Mot. to Dismiss the Order Instituting Proceedings (Jul. 5, 2012), at 8-9 ("[I]f the SEC were to initiate a district court proceeding to enforce its Section 106 request, the district court could be convinced that ordering DTTC to comply with the Section 106 request by producing the requested workpapers would potentially expose DTTC to severe sanction in China, and thus decide not to enforce the Section 106 request").  Accordingly, absent a stay, the instant action and the parallel administrative proceeding will—on two separate tracks—apply the same multi-factor test to nearly identical factual circumstances.

The SEC identifies a number of other purported differences between the instant action and the parallel administrative proceeding, but none of those undermine the central commonality the two cases share.  The SEC contends that, unlike the administrative proceeding, the instant action will not consider the "willful refusal" standard under Section 106(e), and that even if that standard is analogous to the contempt standard, that issue is not yet before this Court.  Opp'n to

5

Objections at 16-17.  The SEC, once again, misses the obvious overlap in issues.  DTTC's good faith efforts to comply with the subpoena here (notwithstanding its inability to do so without violating China law) preclude imposition of contempt sanctions.  *See Societe Internationale Pour Participations v. Rogers*, 357 U.S. 197 (1958); *In re Sealed Case*, 825 F.2d at 498.  Similarly, in the parallel administrative proceeding, the "willful refusal" standard cannot be satisfied where DTTC and the other China-based audit firms have acted in good faith.  15 U.S.C. § 7216(e) (only a "willful refusal" to comply with an SEC request for audit workpapers and other documents under Section 106 constitutes a violation of the federal securities laws); *see Societe Internationale*, 357 U.S. at 212 (good faith inability to comply due to foreign law precludes civil sanctions in U.S. court).  Thus, in addition to the overlap regarding the enforceability of the document requests and subpoena here, the propriety of any sanctions will turn on substantially the same considerations.

The SEC also suggests the issues do not completely overlap because (unlike here) the SEC does not seek to compel the production of documents in the parallel administrative proceeding, and the SEC's authority under the 1933 and 1934 Acts will not be at issue there.  But there is no requirement under *Landis* and its progeny that parallel actions be identical in every respect before a stay may be imposed.  *Bridgeport Hosp. v. Sebelius*, No. 09-1344 (RWR), 2011 U.S. Dist. LEXIS 24138, at *4 (D.D.C. Mar. 10, 2011) (stay appropriate even where parallel proceedings "'may not settle every question of fact and law,' but would settle some outstanding issues and simplify others") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)).  The two matters share core factual and legal questions that are more than sufficient to justify a stay.

Even under ordinary circumstances, resolving the enforceability of substantially identical document requests in parallel and with potentially inconsistent results does not serve the interests

of judicial efficiency or fairness.  But here, the downsides are even more significant.   By lifting

the stay, this Court will thrust itself into the middle of an international dispute between the SEC

and its counterpart in China, create the potential for inconsistent rulings with a profession-wide

agency proceeding of significant public importance, and potentially undercut the best current

opportunity for an efficient and *global* resolution of the sensitive issue of the SEC's access to

audit workpapers in China.  Application of the correct underlying legal standard unmistakably

demonstrates that the instant case should remain stayed.

> **C.    Neither the Duration of the Stay Nor the Balance of Interests Cures the March 4 Order's Error of Law.**

Unable to defend the March 4 Order's application of an incorrect legal standard, the

Division unfortunately mischaracterizes DTTC's positions regarding the duration of the stay and

the need for it, arguing that DTTC purportedly "seek[s] a stay that would last *indefinitely* without

identifying a 'pressing need.'"  Opp'n to Objections at 11 (emphasis added).  According to the

Division, DTTC's request for a stay must therefore be "rejected irrespective of DTTC's claimed

judicial efficiencies that a stay allegedly would bestow."  *Id*. at 17.  Even if DTTC were seeking

an "indefinite stay" (and it decidedly is not), that would not cure the March 4 Order of its

reversible error.  As the SEC concedes, the court must "weigh competing interests and maintain

an even balance" when deciding whether to stay this case.  *Id*. at 10 (citing March 4 Order at 4).

The Magistrate Judge's analysis of the "competing interests" was premised on the incorrect

conclusion that any overlap between the parallel proceedings was "not material."  March 4 Order

at 3, 16.  As demonstrated above, if the correct legal standard is applied here, the requirements

for a stay are clearly met.

In any event, the record is absolutely clear that DTTC does *not* seek an "indefinite" stay

with "no clear ending point."  Opp'n to Objections at 11.  Counsel for DTTC confirmed at the

January 29, 2013 hearing that DTTC seeks a stay only until the ALJ issues an initial decision in the administrative proceeding.  Hr'g Tr. at 26-28; *see also* March 4 Order at 8-9.  Under SEC rules, that initial decision must be issued within 300 days of service of the OIP, which the SEC purported to serve in December 2012.[2]  And in the alternative, DTTC seeks an even shorter stay: until the ALJ issues a decision on DTTC's pending motion to dismiss the administrative proceeding, which is already fully briefed and submitted to the ALJ for decision.  DTTC Opp'n to Mot. to Lift the Stay, Jan. 7, 2013 (Doc. No. 42), at 4 n.3, 16 n.10.  If that motion is granted by the ALJ, the SEC will be required to proceed first in federal court to seek of enforcement of its Section 106 requests before attempting to sanction the China-based audit firms, in which case a federal court can then resolve the enforcement aspects of those ten other requests in a single proceeding in conjunction with the instant subpoena enforcement action.

DTTC has further suggested that this Court could lift the stay solely to address two dispositive threshold issues that do not overlap with the administrative proceeding: (1) whether the subpoena here was properly served on DTTC[3]; and (2) whether, under the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), the subpoena exceeds the territorial restrictions on the SEC's statutory subpoena authority under the 1933 and 1934 Acts.  DTTC believes that resolution of these threshold issues will resolve this entire case,

---

[2]      DTTC and the other China-based firms have objected to the manner in which the SEC has served the OIPs in the administrative proceeding, and contend that the SEC should pursue service through the Hague Convention.  If the ALJ determines that service of the OIPs must be made through the Hague, that may extend the time when the ALJ's initial decision is due up to six months.  Hague Service Convention art. 15 (attempted service via a central authority under the Hague Service Convention may be deemed effective, even where the central authority does not certify that it has made service, if six months have passed since the documents were transmitted).  Of course, the SEC is free to start that clock at any time by initiating service through the Hague.

[3]      *See, e.g.*, Jamison Decl., Mar. 20, 2013 (Doc. No. 54); SEC Opp'n & Resp. Addressing Post-Hearing Decl., Mar. 28, 2013 (Doc. No. 56); DTTC Mem. in Reply to Opp'n & Resp. Addressing Post-Hearing Decl., Apr. 4, 2013 (Doc. No. 57).

and avoid any need for this Court to be drawn into the sensitive international issues involved here.  Under any of these approaches, DTTC does not seek a stay of indefinite duration.

Beyond that, the record is clear that the SEC will suffer no material harm if the case remains stayed:

- First, review of the record here shows that an order requiring DTTC to comply with the subpoena will *not* facilitate the SEC's obtaining the requested documents.  DTTC simply cannot produce the documents without authorization from its primary regulators in China.[4]  In any event, the D.C. Circuit has made clear that DTTC should not be put in this position.  *In re Sealed Case*, 825 F. 2d at 498.

- Second, the SEC argues against any "further stalling" of the "now 20-month old Longtop investigation."  Opp'n to Objections at 12.  But the SEC itself (rightly) requested a lengthy stay in order to pursue negotiations with the CSRC, and DTTC now seeks a further stay for the same basic reason: to ensure that this issue is resolved properly on a profession-wide basis.

- Third, there is no possibility of ongoing fraud or harm to investors regarding Longtop.  The Commission revoked the registration of Longtop's securities on December 14, 2011, and they are no longer publicly traded in the United States.  *In the Matter of Longtop Fin. Techs. Ltd.*, Exchange Act Release No. 65,948 (ALJ Dec. 14, 2011) (Order Making Findings and Revoking Registration by Default).  The SEC's investigation is thus entirely retrospective.

---

[4]        The SEC suggests that extending the stay on this ground would reward DTTC for acting "contumaciously."  Opp'n to Objections at 19.  But the U.S. Supreme Court has made clear that when a party, despite its good faith, cannot comply with a document request without violating the law of its home country, such conduct is not "contumacious" and does not support the imposition of contempt sanctions.  *Societe Internationale*, 357 U.S. at 212.

- Fourth, DTTC is a victim and whistleblower regarding the Longtop fraud, and is not a wrongdoer itself. As a federal judge in New York concluded in dismissing class action claims against DTTC: "the allegations in the Complaint lead to the compelling and stronger inference that DTTC performed a diligent audit, only to be duped by Longtop's fraud." *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, No. 11 Civ. 3658, 2012 WL 5512176, at *10 (S.D.N.Y. Nov. 14, 2012). Indeed, when DTTC learned of the fraud, it resigned and issued a letter describing what it had learned, which it knew Longtop was required to file publicly with the SEC. May 22, 2011 Resignation Letter to Longtop Financial Technologies Limited Audit Committee, Warden Decl., Ex. 13, Apr. 11, 2012 (Doc. No. 23-11).

As such, the SEC has not shown (and cannot show) that it will suffer any material harm by staying this case for a relatively short duration. On the other hand, the "need"—which fairly can be characterized as "pressing" in any event—for the stay is clearly demonstrated by the inefficiencies, risk of inconsistent results, and potential burdens on DTTC of the sort the D.C. Circuit has held should be avoided. This case should remain stayed.

> **D.  The SEC Cannot Justify the Absence of the Opportunity For DTTC to Take Limited Discovery Here.**

As demonstrated in DTTC's Objections, by applying the incorrect legal standard to this subpoena enforcement action, the March 4 Order also declined to recognize the "special circumstances" that require the opportunity for limited discovery here. DTTC Objections at 14-18.

The SEC contends that discovery is necessary in this matter, but the SEC's own filings in this proceeding are inconsistent with that argument. Indeed, the SEC explains in its Opposition that it submitted voluminous declarations itself to address factual issues and offered to

"consider" additional requests for discovery, which DTTC believes are necessary to respond fully to these new factual submissions.  Opp'n to Objections at 22-23.  But the stay of the case was in effect and so DTTC could not and did not have any reasonable opportunity to go forward with discovery prior to the March 13 hearing.  The SEC now argues that discovery is "moot" since the March 13 hearing went ahead anyway, but it is of course not too late to rectify the denial of discovery.  The "special circumstances" presented in this case require discovery as a matter of law, *SEC v. Lavin*, 111 F.3d 921, 926-27 (D.C. Cir. 1997), and the denial of discovery was premised on the "narrow" and incorrect legal standard that was applied in the March 4 Order.

In fact, the instant action presents even greater "special circumstances" than usual.  One of the parties in this case (the SEC) has been engaged in direct and extensive negotiations with China about the very documents at issue here.  The SEC has been permitted selectively to decide what to reveal from those negotiations in its own submissions, and now contends that "discovery surrounding these facts is unnecessary."  Opp'n to Objections at 24.  But the multi-factor test requires consideration of "the competing interests of the nations whose laws are in conflict." *See, e.g.*, *Minpeco, S.A.*, 116 F.R.D. at 523.  On that score, the SEC has argued that "China's interests in precluding production by DTTC are, most fundamentally, sovereignty for sovereignty's sake," and therefore not a "legitimate interest" to which this Court should afford any weight.  SEC Reply to Opp'n to Mot. for Order to Show Cause & Order Requiring Compliance with a Subpoena, Dec. 3, 2012 (Doc. No. 38), at 16.  DTTC is entitled to know the manner in which China's interests were discussed and described in its negotiations about the Longtop documents and similar workpapers.

11

The multi-factor test also requires an assessment of whether there is an "alternative means of securing the information." Restatement (Third) of Foreign Relations Law § 442(1)(c) (1986). Certainly, correspondence regarding the negotiations about the SEC's access to workpapers located in China is highly relevant to assessing whether the SEC has a viable "alternative means of securing" the Longtop workpapers. Basic fairness requires discovery on that factual issue.

In sum, by applying an incorrect legal standard, the March 4 Order erred in determining that discovery was unnecessary. The March 4 Order should be set aside, and (if the case is not stayed entirely or dismissed) DTTC should be afforded a proper opportunity to seek and obtain appropriate discovery from the SEC.

## **CONCLUSION**

For the foregoing reasons, DTTC respectfully requests that this Court continue the stay in this case, pending the issuance of an initial decision by the ALJ in the parallel administrative proceeding. In the alternative, this Court should lift the stay solely to allow the dispositive threshold issues in this action to be decided (service; extraterritoriality), which do not overlap with the parallel administrative proceeding. Finally, and at a minimum, DTTC respectfully requests that this Court remand to the Magistrate Judge for re-consideration of the issues herein based on the correct legal standard.

Dated:  April 8, 2013                    Respectfully submitted,


                                           /s/ Miles N. Ruthberg

                                         LATHAM & WATKINS LLP
                                         Miles N. Ruthberg (255836)
                                         Jamie L. Wine (502548)
                                         885 Third Avenue
                                         New York, New York  10022-4834
                                         Tel: (212) 906-1200

  /s/ Michael D. Warden

SIDLEY AUSTIN LLP
Michael D. Warden (419449)
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000

Gary F. Bendinger, *pro hac vice*
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300

*Counsel for Respondent Deloitte Touche Tohmatsu
CPA LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2013, I served via electronic mail the above Respondent's

Reply Memorandum in Support of Objections to Magistrate Judge's March 4, 2013 Order on:

David Mendel
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-2557
MendelD@sec.gov


   /s/ Miles N. Ruthberg
_____

LATHAM & WATKINS LLP
Miles N. Ruthberg (255836)
Jamie L. Wine (502548)
885 Third Avenue
New York, New York  10022-4834
Tel: (212) 906-1200

14